DECISION AND JUDGMENT ENTRY
This is an appeal from a Ross County Common Pleas Court judgment granting a motion for a modification of the allocation of parental rights and responsibilities filed by Joseph M. Wangugi, plaintiff below and appellee herein.
Marion E. Wangugi, defendant below and appellant herein, raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED ERROR BY MODIFYING A PRIOR AWARD OF CUSTODY OR ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITY WITHOUT FINDING THAT A CHANGE HAS OCCURRED IN THE CIRCUMSTANCES OF THE CHILD OR HIS RESIDENTIAL PARENT, AND THAT MODIFICATION IS NECESSARY TO SERVE THE BEST INTEREST OF THE CHILD."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED ERROR BY CONSIDERING DOCTRINAL RELIGIOUS ISSUES IN MAKING A DETERMINATION OF THE BEST INTEREST OF A CHILD."
In 1995, the parties divorced. On July 17, 1997, the trial court awarded and allocated to appellant the parental rights and responsibilities of the parties' minor children, Aaron and Leah.
On February 2, 1999, appellee filed a motion to modify custody of the parties' two children. In his motion, appellee alleged that a change of circumstances had occurred and that the children's best interests would be served by modifying the custody order. Appellee alleged that the children "have been put at risk as they have attempted to run away, been neglected, and they have lacked medical attention."
The trial court set the matter for a hearing before a magistrate. Evidence adduced at the hearing revealed that both appellant and appellee enjoy warm, loving relationships with both children. The evidence also disclosed that appellant and appellee practice different religious faiths. Appellee is a Roman Catholic, while appellant is a Jehovah's Witness. The parties' children have attended a Catholic school in the Chillicothe area since they became school-age children. The magistrate also noted that appellant stated that she intends to remove the children from the Catholic school and to enroll them in public school.
The magistrate interviewed each child. Aaron stated that he wished to live with his father because he has more friends who live close to his father. The magistrate noted that Aaron expressed feelings of isolation because his mother lives in a rural area. The magistrate further noted that neither child appeared dissatisfied with appellant's religious practices and beliefs and that neither child appeared concerned about the effect that appellant's religious practices and beliefs has on them. Aaron informed the magistrate that appellant had discussed removing him from the Catholic school and enrolling him in public school. Aaron stated that he does not want to attend public school. Appellee, who lives in Columbus, stated that he has investigated area Catholic schools that Aaron may attend that are located near appellee's home.
The evidence further revealed that sometime between November 1997 and the spring of 1998, Aaron contracted alopecia. Appellant consulted two physicians and Aaron was given oral medication. On February 2, 1999, appellee, apparently dissatisfied with appellant's attempt to treat Aaron's condition, took Aaron to Children's Hospital in Columbus to treat the condition. Appellant canceled Aaron's follow-up appointments at Children's Hospital. Appellant stated that she canceled the appointments because she was concerned that appellee would not inform the Columbus doctor that Aaron had a physician in Chillicothe and that Aaron was taking oral medication. Appellee stated that he did not tell Aaron's doctor in Columbus that he had a physician in Chillicothe.
On August 3, 1999, the magistrate recommended that appellee be deemed Aaron's residential parent. The magistrate did not, however, recommend a modification of the allocation of parental rights and responsibilities with respect to Leah.
On November 24, 1999, the trial court adopted the magistrate's report recommending that appellee be awarded custody of Aaron.[1] The trial court found that the modification would serve Aaron's best interests. Appellant filed a timely notice of appeal.
 I
In her first assignment of error, appellant asserts that the trial court erred by modifying the custody order without finding that a change in circumstances had occurred.
We initially note that when "an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." Bechtol v. Bechtol
(1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus; see, also,Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418,674 N.E.2d 1159, 1162. Furthermore, a reviewing court should afford the utmost deference to a trial court's decision regarding child custody matters. See, e.g., Miller v. Miller (1988), 37 Ohio St.3d 71,74, 523 N.E.2d 846, 849. Consequently, absent an abuse of discretion, a reviewing court will not reverse a trial court's decision regarding child custody. See, e.g., Bechtol, supra. A trial court does not abuse its discretion unless the trial court's judgment is arbitrary, unreasonable, or unconscionable.
When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 450 N.E.2d 1140, 1142. As the court explained in SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273, 1276:
 "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
See, also, Davis, 77 Ohio St.3d at 418, 674 N.E.2d at 1162. Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Id., 77 Ohio St.3d at 419,674 N.E.2d at 1163.
While a trial court's discretion in a custody modification proceeding is broad, it is not absolute. The trial court must follow the procedure outlined in R.C. 3109.04. Miller,37 Ohio St.3d at 74, 523 N.E.2d at 849.
R.C. 3109.04(E)(1)(a) governs the modification of a prior decree of the allocation of parental rights and responsibilities. The statute provides:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
* * * *
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
In determining whether to modify custody, three factors generally guide a trial court's decision: (1) whether there has been a change in circumstances; (2) whether a modification is in the child's best interests; and (3) whether the benefits resulting from the change will outweigh and harm. See R.C.3109.04(E)(1)(a); see, e.g., Clark v. Smith (1998), 130 Ohio App.3d 648,653, 720 N.E.2d 973, 976.
In Davis, 77 Ohio St.3d at 416-17, 674 N.E.2d at 1161, the court discussed the requirement of a "change in circumstances" and emphasized that a trial court's finding of whether a change in circumstances has occurred must not be disturbed absent an abuse of discretion. The court stated:
 "R.C. 3109.04 requires a finding of a `change in circumstances.' Such a determination when made by a trial judge should not be disturbed, absent an abuse of discretion. In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change, including a change in circumstances because of a child's age and consequent needs, as well as increased hostility by one parent (and that parent's spouse) which frustrates cooperation between the parties on visitation issues."
The Davis court continued:
 "Clearly, there must be a change of circumstances to warrant a change of custody, and the change must be of substance, not a slight or inconsequential change.
 The nomenclature is not the key. As the Wyss court aptly stated:
 `The clear intent of that statute is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a `better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.' Wyss [v. Wyss (1982)], 3 Ohio App.3d [412,] 416, 445 N.E.2d [1153,] 1157.
 In determining whether a `change' has occurred, we are mindful that custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her * * * and such a decision must not be reversed absent an abuse of discretion. Miller v. Miller (1988), 37 Ohio St.3d 71, 523 N.E.2d 846."
Davis, 77 Ohio St.3d at 418, 674 N.E.2d at 1162. We note that "[t]he purpose of finding a change of circumstances is to prevent a constant relitigation of issues which have already been determined by the trial court. Clyborn v. Clyborn (1994),93 Ohio App.3d 192, 196, 638 N.E.2d 112." Allgood v. Allgood (Oct. 25, 1999), CA98-12-156, unreported.
Once a change in circumstance has been demonstrated, the trial court next must consider whether the modification would serve the child's best interests. R.C. 3109.04(F)(1) specifies the factors that a trial court should consider when determining a child's best interests:
 In determining the best interest of a child * * * the court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child * * * regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to [certain criminal offenses];
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
If the trial court concludes that a change in circumstances has occurred and that the child's best interests would be served by a modification of custody, the trial court may not modify the custody order unless the court determines that the harm likely to be caused by a change of environment is outweighed by the benefits of the change of environment. R.C. 3109.09(E)(1)(a)
In the case at bar, we find substantial competent and credible evidence to support the trial court's decision to modify the allocation of parental rights and responsibilities with respect to Aaron. The record reveals that appellant intends to remove Aaron from the school that he has attended since kindergarten. Additionally, the trial court noted that Aaron expressed a desire to live with his father. While we do not necessarily believe that a child's preference should alone determine whether a change in circumstance has occurred, we believe a trial court may properly consider the child's wishes when determining whether a change in circumstance has occurred. See, generally, Nusbaumer v. Cherry (Apr. 26, 1999), Stark App. No. 98 CA 0243. Moreover, we note that the passage of time, as well as the age of the child, may factor into the trial court's analysis of whether a change in circumstance has occurred. SeeDavis, 77 Ohio St.3d at 420, 674 N.E.2d at 1163. The Davis court recognized that even a slight "maturing of the child" could result in a change in circumstance. Id. The Davis court noted, however, that age alone should not be a factor. Id.
In the case at bar, Aaron is becoming a young man. Nearly three years have passed since the original allocation of parental rights and responsibilities. During the interview with the magistrate, Aaron stated that while he enjoys spending time with his mother, he has developed common interests with his father. We believe that the factors outlined above sufficiently demonstrates a change in circumstance.
Appellant asserts that the trial court's finding of a change of circumstance was not one "of substance." See Davis, supra. Given that a reviewing court is to afford the trial court's decision regarding a change of circumstance the utmost discretion, we will not substitute our judgment for that of the trial court and we will not second-guess the trial court's determination. Moreover, "[w]hile we do not want to subject children to tug-of-war between two parents continually attempting to gain custody, we must not make the threshold for change so high as to prevent a trial judge from modifying custody if the court finds it is necessary for the best interest of the child."Davis, 77 Ohio St.3d at 420-21, 674 N.E.2d at 1164.
Appellant further argues that the trial court failed to specify in its judgment entry what it believed constituted the change in circumstance. First, we note that appellant did not file a timely request for Civ.R. 52 findings of fact and conclusions of law. The failure to file a timely request for findings of fact and conclusions of law waives the right to challenge the trial court's lack of an explicit finding with respect to a change in circumstances. See Ruby v. Ruby (Aug. 11, 1999), Coshocton App. No. 99 CA 4, unreported. See, generally,Carman v. Carman (1996), 109 Ohio App.3d 698, 703,672 N.E.2d 1093, 1096. Moreover, we note that in its judgment entry, the trial court recited the correct standard for modifying custody. Thus, we presume that the trial court employed the proper standard when deciding the custody modification issue.
Second, as stated above, the record reveals that a change in circumstances has occurred. We again note that: (1) appellant plans on removing Aaron from the school he has attended since kindergarten; (2) Aaron expressed a desire to live with appellee; and (3) several years have passed since the original custody award and Aaron has matured. Given the foregoing circumstances, we do not believe that the trial court abused its discretion by modifying custody of Aaron.
Further, we note that the trial court determined that the change in custody would serve Aaron's best interests and that any resulting harm would outweigh the benefits. The court noted that although Aaron enjoys a loving relationship with both his mother and father, Aaron expressed his desire to live with his father. See R.C. 3109.04(B). Finally, the trial court concluded that any harm caused by the change in environment would be outweighed by the benefits. After our review of the proceedings below, we find no abuse of the trial court's discretion.
Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II
In her second assignment of error, appellant argues that the trial court inappropriately considered appellant's religious faith when considering whether to modify the custody order.
We agree with appellant that a parent's conduct, including the parent's religious practices, is not relevant in a custody modification proceeding unless evidence is offered that the parent's conduct has adversely affected the child. See Pater v.Pater (1992), 63 Ohio St.3d 393, 588 N.E.2d 794, paragraph one of the syllabus. In Pater, the court held:
 "A parent may not be denied custody of a child on the basis of the parent's religious practices unless there is probative evidence that those practices will adversely affect the mental or physical health of the child. Evidence that the child will not be permitted to participate in certain social or patriotic activities is not sufficient to prove possible harm."
Id. See, generally, Inscoe v. Inscoe (1997), 121 Ohio App.3d 396,414, 700 N.E.2d 70, 81. Thus, in resolving child custody issues, absent some evidence that a parent's religious beliefs or practices adversely affects the child's mental or physical health, a trial court should not favor or select one parent's religious practices over the other parent's practices.
In the case at bar, we find no evidence that the trial court considered appellant's religion or religious practices when determining the custody modification issue. We acknowledge that the magistrate's report contained accurate statements of fact regarding the parties' religious practices. The report did not, however, rely upon the parties' religious differences when resolving the custody modification issue. In fact, the magistrate's report explicitly indicates that neither child expressed any concerns with either parent's religious practice and that neither child displayed any adverse effects from appellant's religious beliefs.
Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, P.J. *Grey, J.: Concur in Judgment Opinion
For the Court
 BY: _______________________ PETER B. ABELE, JUDGE
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[1] We note that the trial court overruled appellee's motion to modify custody of Leah.
* Lawrence Grey, retired, sitting by assignment of the Ohio Supreme Court in the Fourth District.