**CLARK, Appellant,**

v.

**SMITH, Appellee.**

[Cite as *Clark v. Smith* (1998), 130 Ohio App.3d 648.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–98–22.

Decided Dec. 8, 1998.

*Richard A. Kahler,* for appellant.

*Dean Henry,* for appellee.

HADLEY, Judge.

Rhonda Smith Clark appeals the judgment of the Seneca County Court of Common Pleas awarding Todd Smith custody of their two children and ordering her to pay child support.

Rhonda and Todd were married on December 5, 1989. They were divorced on May 12, 1994. Two children were born to them, Christopher Todd Smith, born September 19, 1990, and Alesha Elizabeth Smith, born October 4, 1992. At the time of the divorce, Rhonda was declared to be the residential parent and legal custodian of the two children. Todd was ordered to pay monthly child support in the amount of $454.19, including poundage, and to maintain health insurance for the benefit of the children. Todd was granted visitation pursuant to the trial court's Local Rule 66 for parents who live more than one hundred fifty miles apart. Rhonda currently resides in Seneca County, Ohio, and Todd currently resides in Connecticut.

Todd moved for a change of custody, arguing that the ongoing refusal to allow court-ordered visitation and telephone contact constituted a change in circumstances warranting modification of custody. The trial court granted custody of Christopher and Alesha to Todd and granted visitation to Rhonda. The trial court also ordered Rhonda to pay child support.

Rhonda now appeals asserting four assignments of error.

### Assignment of Error No. I

"It was imperative that the trial court, to serve the best interests of the two minor children, retain the appellant-mother as legal custodian, especially when, contrary to the father's main averment, she never denied all decreed long-

distance spring, summer, and Christmas visitations, even when for the three years in question the father's child support went unpaid to the extent of between $12,000 and $9,400, but the trial court did not do so and thus erred."

■ Under this assignment of error, Rhonda asserts that the trial court erred in awarding Todd custody of Christopher and Alesha.[1]

R.C. 3109.04(E)(1)(a) controls modification of custody and provides:

"The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

"* * *

"(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." (Emphasis added.)

■ "When deciding whether a modification of custody is appropriate, the court must determine three things. (1) Has there been a change in circumstances? (2) Is this modification in the best interest of the child? (3) Will the harm that will result from the change be outweighed by the benefits that will result from the change?" *Thatcher v. Thatcher* (Oct. 6, 1997), Mercer App. No. 10–97–08, unreported, 1997 WL 619808, citing *In re Kennedy* (1994), 94 Ohio App.3d 414, 640 N.E.2d 1176. The record must support each of these questions or the modification of child custody is contrary to law. *Thatcher*, citing *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 417, 674 N.E.2d 1159, 1161–1162.

■ First, we must determine whether the trial court abused its discretion in concluding that a change of circumstances existed to modify the custody of Christopher and Alesha. R.C. 3109.04(E) requires trial courts to find a change in the circumstances of the child, the residential parent, or either parent in a shared-parenting situation before ordering a change in custody. This is a threshold finding that the court must consider prior to weighing the child's best interests. The intent of the provision is to "spare children from a constant tug of war between their parents who would file a motion for change of custody each

1. Rhonda was granted Christmas visitation each year from December 26 to January 1 and summer visitation from the Sunday following the dismissal of school until the second Saturday in August.

time the parent out of custody thought he or she could provide the children a 'better' environment." *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 416, 3 OBR 479, 483, 445 N.E.2d 1153, 1158, quoted in *Davis,* 77 Ohio St.3d at 418, 674 N.E.2d at 1162. Accordingly, the change must be a change of substance, not a slight or inconsequential change. *Musson v. Musson* (June 10, 1998), Hardin App. No. 6–98–01, unreported, 1998 WL 305359, citing *Davis,* 77 Ohio St.3d at 418, 674 N.E.2d at 1162.

■ "In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change, including a change in circumstances because of the child's age and consequent needs, as well as increased hostility by one parent (and that parent's spouse) which frustrates cooperation between the parties on visitation issues." *Davis,* 77 Ohio St.3d at 416–417, 674 N.E.2d at 1161.

■ Once the trial court has found that a change in circumstances exists, that finding shall not be disturbed absent an abuse of discretion. *Id.* at paragraph one of the syllabus. "An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary or unconscionable." *Musson, supra,* citing *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030–1031. "Moreover, judgments in child custody cases which are supported by some competent, credible evidence going to the essential elements of the case will not be reversed by a reviewing court as being against the weight of the evidence." *Musson, supra,* citing *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178.

■ The record in this case demonstrates a lengthy hearing with over seven hundred pages of testimony. The trial court found that Rhonda's interference with visitation constituted a change in circumstances warranting modification of the custody of the two children. "It is a well-settled rule in Ohio that a custodial parent's interference with visitation by a noncustodial parent may be considered as part of a 'change in circumstances' which would allow for modification of custody." *Holm v. Smilowitz* (1992), 83 Ohio App.3d 757, 773, 615 N.E.2d 1047, 1057. See, also, *Mitchell v. Mitchell* (1998), 126 Ohio App.3d 500, 710 N.E.2d 793. In this case, the trial court based its finding of a change in circumstances as a result of Rhonda's behavior. For instance, Todd was forced to seek the intervention of the trial court to enjoy visitation with the two children on at least three separate occasions. Rhonda repeatedly denied Todd telephonic conversation with the children. Moreover, Rhonda utilized local law enforcement agencies in Ohio and Connecticut during visitation exchanges. Rhonda refused to accept certified mail regarding visitation arrangements. Rhonda failed to ensure that appropri-

ate clothing accompanied the children on visit and Rhonda presented Christopher to Todd on a visit with a Mohawk haircut.

Based upon a review of the record, we cannot find that the trial court abused its discretion in determining that Rhonda's repeated interference with Todd's visitation constituted a change in circumstances under R.C. 3109.04. At the time of the divorce, Todd was granted visitation with the children each summer from June 15 through August 15, Christmas vacation, and spring vacation in odd-numbered years.[2] Further, Todd was granted visitation on Father's Day with one week's notice to Rhonda and additional visitation with two days' notice to Rhonda if he traveled to the community in which Rhonda resided.

It is evident that continuous problems existed with visitation between Todd and the children. For example, the court was involved in arranging visitation between Todd and the children on at least five different occasions: summer 1994, summer 1995, summer 1996, spring 1997, and Christmas 1997. Moreover, Todd's Thanksgiving 1995 and Christmas 1995 visits did not occur because of conflicts between the parties. In addition, Todd was granted a court-ordered visit in February 1997 that Rhonda refused. Todd did not exercise his Christmas 1994, spring 1995, or Christmas 1996 visitation rights.

Rhonda asserts that the main obstacle to Todd's visitation was the travel arrangements. Rhonda also contends that cooperation between the parties is increasing as demonstrated by the success of the summer 1997 visit. Both parties agree that the summer 1997 visit went well without court intervention. While we agree that the summer 1997 visit went well and hope that the cooperation between the parties will continue, there is credible, competent evidence to support the trial court's determination that Rhonda's obstacles to visitation between Todd and the children constituted a change in circumstances from the time of the divorce decree. Accordingly, we cannot find that trial court abused its discretion.

██ Second, we must determine whether the trial court properly found that the change in circumstances necessitated modification in order to serve the best interests of the children. R.C. 3109.04(E)(1)(a) requires the court to find that a modification of the prior decree is in the child's best interest. In determinations of custody, a reviewing court must defer to the trial judge, who has the best opportunity to gauge the credibility, attitude, and demeanor of each witness.

---

**2.** Todd was required to give Rhonda a thirty-day advance written notice if he wanted to exercise his summer visitation rights. Todd's Christmas visitation began the day Christmas vacation began and lasted until December 26 in even-numbered years and began December 26 and lasted until January 2 in odd-numbered years. A thirty-day advance written notice was also required for Christmas and spring visitation.

*Davis,* 77 Ohio St.3d at 418, 674 N.E.2d at 1162. R.C. 3109.04(F)(1) provides that when a trial court is determining the best interest of the children, it shall consider all relevant factors, including, the following:

"(a) The wishes of the child's parents regarding his care;

"(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

"(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;

"(d) The child's adjustment to his home, school, and community;

"(e) The mental and physical health of all persons involved in the situation;

"(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;

"(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

"(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

"(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;

"(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."

The Supreme Court found that "the best interest of a child encompasses not only the home environment, but also the involvement of both parents." *Davis,* 77 Ohio St.3d at 419, 674 N.E.2d at 1163.

"In today's society that fully admits the need for parenting by both parents, each parent should have full involvement in a child's life, where possible and desired by the parent. When one parent begins to cut out another parent, especially one that has been fully involved in that child's life, the best interest of the child *is* materially affected." (Emphasis *sic.*) *Id.*

The trial court was presented with substantial evidence relevant to its inquiry under R.C. 3109.04(F)(1). From the transcript before us, it is evident that Todd and Rhonda did their best to cast each other in the worst possible light. This behavior demonstrates why·discretion is placed with the trial court to resolve issues concerning the allocation of parental rights and responsibilities.

Our review of the record reveals that the trial court carefully considered the factors in R.C. 3109.04(F)(1)(a) through (j) and determined that the interests of Christopher and Alesha would best be served by awarding custody to Todd. The trial court found the following: that the interaction of the children with both parties is very good, that the children are of relatively tender years and have shown great flexibility in adjusting to new environments, that the children, Rhonda, and Todd are of good mental health, that Rhonda is the least likely to facilitate and encourage visitation, that Todd has not interfered with visitation between the children and Rhonda when the children have been in his care, that Todd is now cooperating with Ohio and Connecticut authorities in reducing his child support arrearages, that Todd has a secure job that will enable him to provide for the financial needs of the children, that Todd lives close to extended family who will have contact with the children, and that Todd's home is safe and appropriate for the children, with adequate facilities, bedding, and play areas and appropriate toys and activities.

Rhonda now contends that Todd's failure to pay child support from October 1994 to October 1996 indicates that the best interests of Christopher and Alesha are served by allowing Rhonda to retain custody of the children. While we agree that the Todd's lack of child support is negative, the evidence supports a finding that Todd is now paying child support and that he is diligently working on reducing his arrearages. We find more persuasive Rhonda's efforts to cut Todd out of the lives of Christopher and Alesha. Rhonda did not send report cards, pictures, or other information to Todd. Rhonda did not actively seek to keep Todd informed of the progress and development of the children. In addition, when the children were with Rhonda, she repeatedly denied telephone contact between them and Todd. Although we have no doubt that both parents love the two children, we find that the trial court properly considered the appropriate

factors and determined that the best interests of Christopher and Alesha warranted a modification in custody.

Third, we must determine whether the trial court complied with R.C. 3109.04(E)(1)(a)(iii) in concluding that the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to Christopher and Alesha. The trial court determined that the long distance between the two parties will not have a significant effect on the children and that any negative effect could be reduced by a regular plan of visitation. The trial court also noted that the parties were originally living in Connecticut and the children were born in Connecticut. In addition, the trial court found that the children are of relatively tender years, and have shown great flexibility in adjusting to new environments. The trial court also found that although Christopher just recently started school, he will be able to adjust favorably to a new home and educational environment. Alesha's adjustment will be made easily as she has not begun formal education.

Rhonda now argues that Christopher and Alesha each have their own rooms in her house and would have to share a room in Todd's condominium. Rhonda also asserts that the guardian *ad litem* found that the children are thriving while living with Rhonda. Moreover, Rhonda contends that Christopher is enrolled in school and Alesha attends a storyhour regularly and that these events would be disrupted by the change in environment. Although we agree to a certain extent with Rhonda, we find competent, credible evidence to support the trial court's decision.

Further, the trial court clearly felt that Todd was more likely to facilitate visitation and communication than was Rhonda. Although this point is also a factor in the best-interest analysis, it is certainly applicable here as well. Upon a review of the record, we cannot find that the trial court erred in concluding that the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to Christopher and Alesha.

Having reviewed the record, we are unable to say that the trial court committed any error. The record demonstrates that the court considered all factors that would support a change in circumstances. Further, competent and credible evidence was presented to support the trial court's decision that a change in custody was in the best interest of Christopher and Alesha and that the harm of a change of environment was outweighed by the benefits of the change. Accordingly, Rhonda's first assignment of error is overruled.

## Assignment of Error No. II

"The trial court, in carbon-copying the appellee's proposed findings of fact and conclusions of law as his own, totally disregarded his duty to review the record and make independent findings and conclusions to support *his* decision."

Rhonda contends that the trial court did not spend time reviewing the record and making its own findings and conclusions.

After the trial court entered a judgment awarding custody to Todd of Christopher and Alesha, Rhonda requested findings of fact and conclusions of law pursuant to Civ.R. 52. The trial court then ordered Rhonda and Todd to submit their own proposed findings of fact and conclusions of law by a specified date. Todd submitted his, but Rhonda failed to do so. The court entered its findings of facts and conclusions of law, which were basically the same as those submitted by Todd.

Rhonda now asserts that the trial court's findings are heavily biased in favor of Todd and cannot be trusted. Rhonda relies on *Childs v. Childs* (June 9, 1997), Butler App. No. CA96–08–163, unreported, 1997 WL 311584, for the proposition that the trial court adopted Todd's findings and those findings are biased and unsupported by the evidence in the record. Rhonda asserts that the trial court erred in finding the following: the wrong date of divorce, the existence of a shared-parenting plan, the existence of substantial changes since the divorce, the determination that Todd lives close to extended family, the determination that Todd did not interfere with visitation when the children were in his care, the inherent determination that Todd did not leave Sears to avoid paying child support, the determination that Todd has a secure job, and the determination that the children will be safe and secure at Todd's home, even with the pit bull.

■ A trial court may adopt a party's findings of fact and conclusions of law as long as the trial court judge has reviewed the document thoroughly and ensures that it is accurate. *Adkins v. Adkins* (1988) 43 Ohio App.3d 95, 98, 539 N.E.2d 686, 689–690. In this case, we find that the trial court did adopt Todd's findings of fact and conclusions of law.

■ In the findings of fact, the trial court did mistakenly state the wrong date of divorce. The correct date of divorce was May 12, 1994; however, this mistake was not relevant to the determination of custody of the two children. The findings of fact also include a statement that a shared-parenting plan was adopted in the divorce decree. No plan was adopted. However, we find that the trial court was aware that Rhonda was the residential parent and that Todd was granted visitation by the original divorce decree. Thus, we do not find that this mistake was a prejudicial error.

■ The remaining errors asserted by Rhonda are judgments made by the trial court and are supported by the evidence. We leave factual determinations for the trial court and we will not reverse them absent competent, credible evidence. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR

408, 461 N.E.2d 1273; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

The trial court found substantial changes since the time of the divorce. The findings of fact stated: *"Since the parties' divorce,* circumstances in the living arrangements and familial relationship of the minor children have gone through substantial changes." (Emphasis added.) Rhonda and Todd have each had changes in their living situations since the divorce, and the evidence supports the finding that there have been changes. For instance, since the divorce Rhonda started cohabitating with Aaron Clark and has now married him. Todd is now cohabitating with Amy Danforth in Connecticut. Moreover, Todd has changed residences.

Rhonda also takes issue with the fact that the trial court found Todd not to have interfered with visitation when the children were in his care. Rhonda refers to an incident where Amy took the children to Kentucky to see her brother's graduation. Rhonda claims that while the children were away she could not reach them. While this may be true, we find competent, credible evidence to support the trial court's determination that Todd did not interfere with visitation between Rhonda and the children, as Todd testified that he attempted to call Rhonda and let her know the children would be out of town.

Rhonda further asserts that the trial court erred by not finding that Todd left his employment at Sears to avoid paying child support and by finding that Todd has a secure job and that the children will be safe and secure with Todd's pit bull. As a reviewing court, we will not reweigh the evidence. *Seasons Coal Co., Inc.,* 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273; *C.E. Morris Co.,* 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. There existed testimony during the trial that provides competent, credible evidence to support each of these findings by the trial court. *Id.* Therefore, we cannot find that the trial court erred.

Accordingly, we overrule Rhonda's second assignment of error.

### Assignment of Error No. III

"The appellee's having the burden at hearing as movant for modification of the prior parenting decree, the trial court erred in accepting posthearing unilateral, unchallengeable 'evidence' of his income to calculate child support."

Under this assignment of error, Rhonda asserts that the trial court erred in calculating child support, as the trial court used the income amount for Todd that Todd provided on his financial disclosure affidavit.

It is well established a trial court's findings and computations made in compliance with R.C. 3113.215 will not be disturbed absent an abuse of discretion.

See *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218, 222, citing *Booth v. Booth* (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028. In order for there to be an abuse of discretion on the part of the trial court, its findings must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

At the hearing for modification of custody, the trial court stated the following concerning Todd's testimony of his income:

"Just so the record is clear, Mr. Kahler, uh, he [Todd] had indicated on direct examination he made between—I was gonna mention this before he got off the stand. Made four dollars an hour base, and he made ten to twelve dollars an hour tips based on dealer hours.

"If I do the math, that's between fourteen and sixteen and, uh, that adds up to thirty, divided by two is fifteen bucks an hour. Uh, I didn't—I was gonna ask him some other questions about whether that was self-employment, tax, uh, susceptible, and things of that nature but—and I took fifteen dollars an hour times forty hours a week times fifty-two weeks out of the year, thirty-one thousand two hundred dollars. That's what I came up with."

Todd submitted the appropriate affidavit of income, expenses, and financial disclosure on February 20, 1998. Todd listed $29,538 as his gross annual income on his financial disclosure affidavit and supported his affidavit with his 1997 W–2 form, which stated his income as $29,538. Todd also attached three copies of his most recent paycheck stubs, demonstrating weekly earning in the amounts of $613.80, $632.80, and $593.23. Rhonda likewise submitted her affidavit on March 18, 1998. The trial court then used the child-support computation worksheet to compute the child-support obligations of the parties. The child-support computation worksheet was filed with the journal entry ordering Rhonda to pay child support on March 19, 1998.

Rhonda now asserts that the trial court should have used the $31,200 figure as opposed to the $29,538 figure in computing child support. We cannot find that the trial court committed error in determining Todd's income based upon statutory procedures. Todd supported his financial affidavit with appropriate documents. In addition, Todd's documentation is from his present employer and represents his current position with that employer. Todd's paycheck stubs demonstrate that his weekly pay fluctuates, and Todd's testimony at trial verifies this fluctuation. Thus, the W–2 form is a good measure of his income. Accordingly, the trial court did not abuse its discretion by using the income amount provided by Todd from his affidavit and his 1997 W–2 form. Rhonda's third assignment of error is overruled.

Assignment of Error No. IV

"The trial court erred in assigning to the appellant federal minimum hourly wage times forty hours weekly income ($10,712) to calculate child support when (1) appellee at hearing neglected to elicit her income information; and (2) appellant was a full-time housewife and mother."

 Rhonda contends the trial court erred in imputing income to her.

"The Supreme Court of Ohio has held that the issue of 'whether a parent is voluntarily (*i.e.* intentionally) unemployed or voluntarily underemployed' and 'the amount of "potential income" to be imputed' are determinations within the trial court's discretion that will be upheld absent an abuse of discretion." *Shank v. Shank* (1997), 122 Ohio App.3d 189, 192, 701 N.E.2d 439, 441, citing *Rock*, 67 Ohio St.3d at 112, 616 N.E.2d at 222.

Again, an abuse of discretion is described as an "unreasonable, arbitrary or unconscionable" attitude. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

R.C. 3113.215(A)(1) provides:

" 'Income' means either of the following:

"(a) For a parent who is employed to full capacity, the gross income of the parent;

"(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent, and any potential income of the parent."

R.C. 3113.215 permits the trial court to impute income to a party under certain circumstances. The statute provides:

"(A)(5) 'Potential income' means both of the following for a parent that the court, or a child support enforcement agency pursuant to sections 3111.20, 3111.211 and 3111.22 of the Revised Code, determines is voluntarily unemployed or voluntarily underemployed:

"(a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides;

 "(b) Imputed income from any nonincome-producing assets of a parent, as determined from the local passbook savings rate or another appropriate rate as determined by the court or agency, not to exceed the rate of interest specified in division (A) of section 1343.03 of the Revised Code, if the income is significant."

"Thus, in calculating and awarding child support, a trial court must consider the 'potential income' as well as the gross income of a parent the court determines to be voluntarily unemployed or underemployed." *Rock*, 67 Ohio St.3d at 111, 616 N.E.2d at 221. In *Rock*, the court emphasized that before a trial court may impute income to a parent, the trial court must make a finding that the parent is voluntarily unemployed or underemployed. Unless the trial court makes this finding, it may not impute income to a parent. See *Parkins v. Parkins* (Jan. 24, 1990), Hancock App. No. 5–88–18, unreported, 1990 WL 7956.

Rhonda submitted her affidavit of income, expenses, and financial disclosure. The form asked the following question: "If you are not working, when did you work last and why are you not working at this time?" To this Rhonda responded: "May 1997—had surgery, now am expecting a new baby and choose to be a stay-at-home mom." The trial court imputed income to Rhonda in the amount of minimum wage. This income computed into the Ohio Child Support Guidelines resulted in a $38.83, weekly child-support obligation including poundage.

In its journal entry ordering Rhonda to pay child support the trial court stated the following:

"The Court finds Plaintiff is not employed, however, there is no documented evidence that she cannot work outside the home following the birth of her expected child. Therefore, the Court imputes minimum wage to her."

We find that the trial court imputed income to Rhonda based upon what appears to be her voluntary decision to not work and to stay at home with her and her new husband's expectant baby. There was no evidence presented showing that the decision was not entirely voluntarily. There was evidence at the hearing for custody modification of Rhonda's employment history. Rhonda testified that she stopped working at the end of July 1997 to be a stay-at-home mother. Her employment previous to this decision included a factory position, a drive-through position, a position with a fire crew company, a position with Payless Shoe Company, and a position with Denny's. Rhonda also testified at the hearing that she was "perfectly healthy."

Rhonda made the decision to stay at home with her child, a decision many people would cherish. At the same time, however, it is not proper to force Todd to bear the greater burden of support for the children he and Rhonda are both equally responsible for. See *Sancho v. Sancho* (1996), 114 Ohio App.3d 636, 644–645, 683 N.E.2d 849, 854–855. There should be no doubt that if Todd chose to quit his job or voluntarily becomes underemployed, his obligation to support his children would not decrease. The trial court would not hesitate to impute income to him, and rightfully so, despite his lowered income. It is equally proper to do the same for Rhonda. Accordingly, we cannot find that the trial court abused its

discretion by imputing income to Rhonda. Rhonda's fourth assignment of error is overruled.

*Judgment affirmed.*

SHAW, P.J., and EVANS, J., concur.