OPINION
This appeal arises from an order of the Common Pleas Court of Jefferson County, Ohio finding Appellant in contempt of a prior custody and visitation order and awarding Appellee custody of their two minor children. For the following reasons, we reverse and remand the judgment of the trial court.
On May 15, 1991 the parties were granted a divorce in the Court of Common Pleas of Jefferson County, Ohio. Appellant, Valerie Jean Martin, was granted custody of their two minor children and was designated as the residential parent. The original divorce decree provided that neither parent could change the residence of the children to a place outside the State of Ohio without approval of the court. Appellee was granted visitation rights consistent with standard Jefferson County visitation schedules.
In December 1996, Appellant's second husband, Jeffrey Jeter. secured employment in Savannah, Georgia beginning January 2, 1997. (Tr. pp. 19-20). On December 20, 1996, Appellant and Mr. Jeter signed a lease for a home in Savannah. (Tr. pp. 20-21). Appellant visited Savannah four times between July and December of 1996 to take a civil service test and attend job interviews, (Tr. pp. 32-33), and was last employed in Jefferson County on December 6, 1996. (Tr. p. 25). Appellant completed Savannah school registration forms for her children on December 20, 1996. (Tr. p. 244). She secured employment in Savannah on December 30, 1996. (Tr. p. 229).
Appellant and her two children relocated to Savannah on January 1, 1997. (Tr. p. 14). Also on January 1, 1997, Appellant prepared a Notice of Intent to Relocate and mailed it to Appellee on January 2, 1997 from Georgia. (Tr. Pp. 14-15). A copy of the letter was filed in the trial court January 3, 1997.
On January 3, 1997, Appellee filed a Motion Prohibiting Removal of the Minor Children and to Reallocate Parental Rights and Responsibilities. The motion asked for an injunction prohibiting Appellant from moving the children out of Ohio and for an order designating Appellee as the residential parent.
On January 3, 1997, the court ordered Appellant to return to Jefferson County and a hearing was set for January 13, 1997. Appellant was not timely served with notice of the hearing and it was rescheduled for January 21, 1997, and again rescheduled for January 27, 1997.
Both parties testified at the January 27, 1997, hearing, as well as a number of Appellee's friends and family members. The court also examined the two children in chambers. The transcript of that closed hearing was sealed and made a part of the record. There was extensive testimony about Appellee's relationship with his children, about Appellee's arrearage in child support payments and about the circumstances surrounding Appellant's move to Georgia. Appellee's counsel also stated that he believed that Appellant was in contempt of court for violating the divorce decree. (Tr. p. 247). The trial court concluded that Appellant should have informed the court and Appellee about the proposed move to Georgia sooner than she did. (Tr. p. 256).
On January 28, 1997, the trial court filed an order which held Appellant in contempt for removing the children from Ohio without prior consent or approval of Appellee or the court in violation of the original divorce order. The order also stated that, "* * * in the best interest of the children * * * [Appellee is] designated the residential parent * * *". The trial court granted Appellant visitation rights.
On February 27, 1997, Appellant filed her notice of Appeal. Her first assignment of error alleges:
 "THE TRIAL COURT ABUSED ITS DISCRETION BY ENTERING A FINDING OF CONTEMPT AGAINST THE APPELLANT ABSENT THE EXISTENCE OF A PROPER MOTION TO DO SO AND WITHOUT DUE PROCESS."
Appellant argues that R.C. § 2705.031 (B) (2) governs contempt of court actions relating to failure to comply with visitation orders or decrees. R.C. § 2705.031 states in pertinent part:
"(B) * * *
 "(2) Any person who is granted visitation rights under a visitation order or decree issued pursuant to section 3109.051, 3109.11, or 3109.12 of the Revised Code or pursuant to any other provision of the Revised Code, or any other person who is subject to any visitation order or decree, may initiate a contempt action for a failure to comply with, or an interference with, the order or decree.
 "(C) In any contempt action initiated pursuant to division (B) of this section, the accused shall appear upon the summons and order to appear that is issued by the court. The summons shall include all of the following:
 "(1) Notice that failure to appear may result in the issuance of an order of arrest, and in cases involving alleged failure to pay support, the issuance of an order for the payment of support by withholding an amount from the personal earnings of the accused or by withholding or deducting an amount from some other asset of the accused;
 "(2) Notice that the accused has a right to counsel, and that if the accused believes that he is indigent, the accused must apply for a public defender or court appointed counsel within three business days after receipt of the summons;
 "(3) Notice that the court may refuse to grant a continuance at the time of the hearing for the purpose of the accused obtaining counsel, if the accused fails to make a good faith effort to retain counsel or to obtain a public defender;
 "(4) Notice of the potential penalties that could be imposed upon the accused, if the accused is found guilty of contempt for failure to pay support or for a failure to comply with, or an interference with, a visitation order or decree."
Appellant contends that Appellee never initiated a contempt action in the trial court in compliance with R.C. § 2705.031 (C) Rather, Appellant argues that the January 27, 1997. hearing was in response to Appellee's January 3, 1997, motion for injunctive relief and a reallocation of parental rights and responsibility. Appellant states that the January 3, motion in no way mentioned a contempt violation. Appellant also argues that even if a motion seeking contempt had been filed, she was not afforded the due process protections set forth in R.C. § 2705.03.
In his brief, Appellee agrees that no motion for contempt was ever filed. Appellee argues that even though there may have been error in the court's finding Appellant in contempt, it was harmless error because the court imposed no contempt penalty.
An appellate court will not reverse a trial court's finding of contempt absent an abuse of discretion. State ex rel.Ventrone v. Birkel (1987), 65 Ohio St.2d 10, 11; Anderson v.Anderson (Dec. 1, 1998), Columbiana App. No. 96 CO 21, unreported. An abuse of discretion is more than an error of law or judgment; rather, it is an unreasonable, arbitrary or unconscionable attitude by the trial court. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
In the present case, we note that there is no controlling authority on the present issue either from within our own district or from the Ohio Supreme Court. We are persuaded however that a body of law represented by In Re Yeauger (1992)83 Ohio App.3d 493, applies to the present case. In Yeauger,
the Third District Court of Appeals determined that R.C. § 2705.031 (C) mandates specific notice requirements in contempt actions. Id., 493 (Emphasis added). The court held that a motion to show cause that lacked the specific notice requirements set forth in the statute did not satisfy due process. Id., 498-499. The court further stated:
 "`Since the legislature has mandated specific notice requirements, the courts are required to substantially comply with the statute. Here, the record is devoid of the required notice, thereby resulting in a deprivation of due process. * * *' * * * If the procedural due process requirements of proper notice pursuant to R.C. 2705.031 (C) could be avoided * * * the requirements set forth in R.C. 2705.031 (C) would be meaningless. Surely, the state legislature did not intend that result."
In Re Yeauger, 498-499, quoting Kosovich v. Kosovich (Dec. 20, 1991), Lake App. No. 90-L-15-086, unreported, 5-6 (quotingFrancis v. Francis [Aug. 8, 1990], Lawrence App. No. 1925, unreported).
Other courts have followed Yeauger. In Nunn v. Nunn (Nov. 2, 1998), Delaware App. No. 97CA-F-12-057, unreported, the Fifth District Court of Appeals held that the appellant was denied due process when he received notice of a show cause motion but was not served with a summons in compliance with R.C. § 2705.031. The court stated that, "[t]he statute sets forth a simple statement by which the requirements of due process may be met."Id., *2. The court further stated that, "* * * where the legislature has set up a statutory proceeding with stated requirements, courts should enforce the procedural mandates."Id. The Fifth District also followed Yeauger in Stigger v.Hight (Aug. 4, 1994), Licking App. No. 95-CA-5, unreported. There, the appellate court found prejudicial error where the trial court did not serve an alleged contemnor in compliance with R.C. § 2705.031 (C). Id., *1-*2 In Ohler v. Ohler (Sept. 16, 1994), Fulton App. No. 93FU000014, unreported, the Sixth District Court of Appeals relied on Yeauger when it held that the trial court denied the appellant's due process rights by failing to properly subpoena him on a contempt action and for failing to properly apprise him of his rights at hearing. Id.,
*4.
In the instant matter, the initial motion which Appellee filed on January 3, 1997, did not indicate that he sought initiation of a contempt proceeding. Rather, the motion sought injunctive relief to keep the minor children in Ohio and to reallocate custody and parental rights. The trial court's order in response to that motion provided that Appellant was not to remove the children from Jefferson County and that if she had already removed the children from Jefferson County, she was to return them within twenty-four hours of service of the order. She was also ordered to honor all current orders of the court and produce the children at a hearing scheduled for January 13, 1997.
At the January 13, 1997 hearing, the trial court learned that service on Appellant had not been perfected. The trial court filed an order on that same day which rescheduled hearing on Appellee's motion for January 21, 1997, ordered that January 3, 1997 order remain in effect and instructed the clerk to obtain service on Appellant at her place of employment in Savannah.
As of January 13, 1997, there was no indication that Appellee was instituting a contempt action against Appellant. The court's order for Appellant to appear also did not include notice of contempt. However, service was obtained on Appellant and her counsel appeared at the January 21, 1997 hearing. At that hearing, Appellee, through counsel, indicated that he believed he had levied a contempt charge against Appellant, contrary to his assertion in his brief in this appeal:
 "[Counsel for Appellee]: * * * We would like to have the hearing this coming Monday because it's a hearing on contempt for her leaving. It's also a hearing on custody for the children and that's really where we are. Mainly we want those kids back here.
 "The Court: In other words, you've cited — you are citing her for contempt; is that correct?
 "[Counsel for Appellee]: Yeah. Part of the motion is for contempt and part of it is for custody * * *".
(Tr. 1/21/97, pp. 5-6). It is clear that the trial court did not understand Appellee's January 3, 1997 motion was to seek an order in contempt. Further, upon notice from Appellee that he was charging Appellant with contempt, the court made no comment and did not clarify the purpose of the impending hearing in its subsequent order. In fact, the word "contempt" did not appear again until Appellee's closing comments to the court following hearing on January 21, 1997. (Tr. 1/21/97, p. 245).
On January 24, 1997, the court filed an order which stated:
 "Upon [Appellee's] Motion for Reallocation of Parental Rights and Responsibilities, it is hereby Ordered:
 "[Appellant] shall appear in Jefferson County Common Pleas Court with the parties' minor children on Monday January 27, 1997 at 9:00 A.M."
The record is completely devoid of any notice by the court that Appellant was to answer Appellee's contempt allegation at the January 27, 1997 hearing; notice which should have contained the due process safeguards mandated by R.C. § 2705.031. The court's orders for Appellant to appear made no reference whatsoever to charges in contempt. Even after Appellee made it clear that he believed he was charging Appellant with contempt, the court stood silent on the issue and unambiguously ordered Appellant to answer only to Appellee's motion for reallocation of parental rights and responsibilities. Despite the undisputed lack of notice of contempt proceedings, the trial court then proceeded to treat the January 27, 1997 hearing as one in contempt, as evidenced by the order now on appeal. In fact, it was not until that order that the trial court gave any indication that what had preceded it was a contempt hearing.
As stated in Nunn v. Nunn, supra, R.C. § 2705.031 (C), "* * * sets forth a simple statement by which the requirements of due process may be met." Id., *2. The failure to meet such a rudimentary procedural requirement is inexcusable. However, Appellee argues that any procedural error in this case was harmless error as the trial court levied no penalty for Appellant's alleged contempt. We reject this argument. The mere failure of a trial court to follow the procedural mandates of R.C. § 2705.031 (C) is prejudicial error in and of itself. Inre Yeauger, supra, 498. Additionally, even if no penalty was imposed for the finding of contempt, the finding itself has prejudicial collateral consequences as R.C. § 2705.05 imposes enhanced fines and potentially longer jail terms for subsequent contempt convictions.
We hold that the trial court's order finding Appellant in contempt without statutorily mandated notice is both unreasonable and unconscionable. Blakemore v. Blakemore, supra,
219. Therefore, we sustain Appellant's first assignment of error and reverse the trial court's finding in contempt.
As this decision renders Appellant's second assignment of error moot, we next address Appellant's third assignment of error which alleges:
 "THE TRIAL COURT ABUSED ITS DISCRETION BY MAKING A CHANGE OF CUSTODY WITHOUT MAKING THE REQUIRED FINDING OF A `CHANGE OF CIRCUMSTANCES' AND BY FAILING TO MAKE THE REQUIRED DETERMINATION THAT `THE HARM LIKELY TO BE CAUSED BY A CHANGE OF ENVIRONMENT IS OUTWEIGHED BY THE ADVANTAGES OF THE CHANGE TO THE CHILD.'"
Appellant argues that in its judgment entry reallocating parental rights, the trial court failed to make a specific finding that a change in circumstance occurred as required by R.C. § 3109.04. Appellant further argues that even if the trial court had specifically found a change in circumstances, the trial court erred by not weighing the advantages of the change in circumstances against the harm likely to be caused by a change of environment to the children.
Appellee responds that although the trial court did not make a specific finding of a change in circumstances, it is implicit in the judge's comments made during the January 27, 1997, hearing. Appellee asserts that Appellant's move to Georgia in and of itself is a change in circumstances sufficient to support the trial court's order reallocating parental rights and responsibilities.
Based on the record before us, we find that Appellant's third assignment of error has merit. We recently reaffirmed that in Ohio, a trial court's decision regarding the custody of children which is supported by competent and credible evidence will not be reversed absent an abuse of discretion. Rohrbaughv. Rohrbaugh (Feb. 11, 2000), Mahoning App. No. 97 CA 183, *2, citing Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus of the court. In determining whether a trial court has abused its discretion, we cannot simply substitute our judgment for that of the trial court. Rohrbaugh v. Rohrbaugh, *2; Blakemore v.Blakemore, supra, 219; Butler v. Butler (1995) 107 Ohio App.3d 633. Rather, an abuse of discretion connotes that the trial court's decision was arbitrary, unreasonable, or unconscionable.Rohrbaugh v. Rohrbaugh, *2; Will v. Will (1996), 113 Ohio App.3d 8; Blakemore v. Blakemore, 219. This is the appropriate standard of review because the trial court is vested with the discretion to do what is equitable upon the facts and circumstances of each case. Rohrbaugh v. Rohrbaugh, *2; Boothv. Booth (1989), 44 Ohio St.3d 142, 144. As such, "a trial court does not abuse its discretion in an award of custody and its decision will not be reversed as against the manifest weight of the evidence when it is supported by a substantial amount of competent and credible evidence." Rohrbaugh v. Rohrbaugh, *2, quoting Bechtol v. Bechtol, supra, 23. With respect to our duty of deference to the trial court in disputes over the custody of children, the Ohio Supreme Court has stated:
 "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct."
Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
While a trial court's discretion in a custody modification proceeding is certainly broad, it is not absolute, and must be guided by the language set forth in R.C. § 3109.04. Rohrbaugh v.Rohrbaugh, *3, Miller v. Miller, 74. This statutory provision provides in pertinent part:
 "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds * * * that a change has occurred in the circumstances of the child, [or] his residential parent * * * and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * *, unless a modification is in the best interest of the child and * * * The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
R.C. § 3109.04 (E) (1) (a).
Thus, three elements must have existed in order for the trial court to have properly modified the existing decree allocating parental rights: (1) there must be an initial threshold showing of a change in circumstances; (2) if circumstances have changed, the modification of custody must be in the children's best interests; and, (3) any harm to the children from a modification of custody must be outweighed by the advantages of such a modification. Rohrbaugh v. Rohrbaugh,
*3; Clark v. Smith (1998), 130 Ohio App.3d 648, 653. The record must support each of these findings or the modification of child custody is contrary to law. Rohrbaugh v. Rohrbaugh, *3; Davisv. Flickinger (1997), 77 Ohio St.3d 415, 417. Additionally, R.C. § 3109.04 (E) (1) (a) creates a rebuttable presumption that retaining the residential parent designated by the prior decree is in the child's best interest. Rohrbaugh v. Rohrbaugh, *3;Meyer v. Anderson (April 18, 1997), Miami Co. App. No. 96CA32, unreported.
In the present case, we cannot deny the evidence on the record that a change of circumstances occurred. Appellant's move to Georgia satisfies the threshold question in the current analysis. It is also apparent that the trial court determined, as stated in its judgment entry of January 28, 1997, that modifying custody was in the best interest of the children. R.C. § 3109.04 (F) (1) sets forth several factors which a trial court is to consider when determining the best interest of a child, among them; the wishes of the parents, the wishes of the child, the child's interaction with his parents, siblings and others who may influence the child's best interest, the child's adjustment to his home, school and community, the parent more likely to honor and facilitate visitation and companionship, whether the residential parent has continuously and willfully denied the other parent his or her right to visitation and whether either parent has established a residence outside of Ohio. The record generally reflects that the trial court had before it evidence of all of those elements. In particular, the trial court indicated more directly that it was considering several of those factors when announcing its decision to reallocate parental rights. (Tr. pp. 255-257).
However, under the present analysis it must also appear on the record that the trial court made a finding that any harm from a modification of custody is outweighed by the advantages of such a modification. Although it may seem that such considerations are redundant to the "best interest of the child" analysis, a more profound inquiry is explicitly contemplated by the legislature pursuant to R.C. § 3109.04 (E). In addition, as we stated earlier, there is a rebuttable presumption that retaining the residential parent designated in the prior decree is in the child's best interest. This alters the dynamic of the "best interest of the child" analysis to necessitate a more intensive scrutiny of what custodial arrangement is more suitable for the child. The factors contained in R.C. § 3109.04 (E) contemplate what is in the best interest of a child without such a presumption. They do not contemplate the effect of removing a child from the custody of a parent, which custody has previously been adjudicated as "best" for the child. Therefore, this presumption based on a prior adjudication is the crux of the further scrutiny required by the last prong of the test.
In the present case, the record demonstrates that the trial court did not undertake this required additional analysis. There is no finding by the court that the benefits of the change in custody outweigh the harms which will undoubtedly be incurred because of this change. Furthermore, there was no evidence presented by either party that specifically demonstrated the harms or benefits, nor is there any indication that the trial court analyzed the evidence presented consistent with the supplemental inquiry.
We therefore hold that the trial court abused its discretion when it did not reach the third prong of the required test, here, and in failing to make a finding that the harms of reallocating parental rights and responsibilities are outweighed by the benefits of the reallocation. As it ignores the distinct language of R.C. § 3109.04 (E), such error is reversible.
Appellant's second assignment of error alleges:
 "THE TRIAL COURT ABUSED ITS DISCRETION BY APPLYING A CHANGE OF RESIDENTIAL PARENT AND LEGAL CUSTODIAN AS A SANCTION FOR CONTEMPT."
We agree with Appellant's statement that a change of custody can not be levied as a sanction for a contempt violation. Fry v. Fry (1989), 64 Ohio App.3d 519, 522. Arguably, the record appears to support Appellant's contention that the trial court's reallocation of parental rights was in response to her relocating the children in violation of the existing custody decree. The tone of the trial court when announcing his decision indicated that great weight was placed on Appellant's relocation. (Tr. pp. 254-257). However, as the trial court did not directly state that the change of custody ordered in the present case was a contempt sanction and as our resolution of Appellant's third assignment of error remands the matter back to the trial court for further determination, this remand renders this issue moot. App.R. 12 (A) (1) (c).
For all the foregoing reasons, we reverse the trial court's judgment finding Appellant in contempt, and reverse and remand the trial court's order reallocating parental rights and responsibilities with instructions for the trial court to reconsider the order consistent with this opinion and the law.
Donofrio, J., concurs in judgment only as to assignment of error number one and concurs in judgment and opinion as to balance of opinion.
Vukovich, J., dissents; see dissenting opinion.
 ______________________ CHERYL L. WAITE, JUDGE