OPINION
Kathleen Dandurand, f.n.a. Decker, brings this appeal from a judgment of the Court of Common Pleas of Seneca County ordering her to pay child support to her ex-spouse, Frederick Decker, in the amount of $100.57 per month. For the reasons set forth in this opinion, we affirm the judgment of the trial court.
The relevant facts are as follows:
The parties were married in 1982 with three children being born as issue of the relationship. In April 1997, Kathleen filed a complaint for divorce citing gross neglect of duty, extreme cruelty, and adultery as grounds for termination. Frederick responded with an answer denying all claims against him, and with a counterclaim alleging that the parties were entitled to a divorce based upon Kathleen's extreme cruelty and gross neglect of duty.
On May 25, 1999, the court issued a final entry of divorce. As part of the entry, the court incorporated by reference a previously executed "split custody" agreement. According to the agreement, Kathleen was designated the residential parent of the parties' two daughters, Ashlee, born January 11, 1983; and Emmalee, born June 6, 1991; while Frederick assumed residential parent responsibilities as to the parties' son, Cory, born February 4, 1986. The agreement also required Frederick to pay $158.24 per week in child support. However, even though this agreement was incorporated into the divorce entry, the court specifically reserved the option to re-examine the issue of child support shortly thereafter since the parties could not furnish the court with final income figures for 1998 by the time of journalization.
As a result, Frederick filed a motion to decrease child support in October 1999. He argued that the 1998 income figures, which were now available for the court's review, warranted such a modification. The matter came on for a hearing in front of a magistrate on November 10, 1999. After considering all of the evidence presented, the magistrate recommended that the court decrease Frederick's child support obligation to $214.04 per month. This new calculation was based, in part, upon the magistrate's finding that Kathleen was voluntarily unemployed at the time of the hearing, and that the $30,000 base salary from her former employment should be imputed as "gross income."
Frederick then filed timely objections to the magistrate's decision. He argued that the magistrate erred in imputing Kathleen's base salary only since her annual gross income was significantly higher after the addition of monthly commissions and bonuses. In reviewing the objections, the trial court ordered a further hearing, limited to the issue of annual income for the years 1997, 1998 and 1999.
The case proceeded to a hearing on February 23, 2000. After taking the matter under advisement, the court rendered a judgment entry on March 13, 2000, finding that Kathleen was voluntarily unemployed, and that $78,362.81 should be imputed to her as "gross income". While Frederick's child support obligation had been terminated, Kathleen was ordered to pay $100.57 per month in child support. This appeal followed wherein Kathleen asserts two assignments of error for our consideration.
 Assignment of Error I The trial court erred and committed an abuse of discretion when it found that the Plaintiff-Appellant became voluntarily unemployed and imputed wages of $78,362.81 to her.
Whether a parent is voluntarily unemployed, and, if so, the amount of potential income to be imputed to that parent for purposes of a child support calculation, are factual issues left to the sound discretion of the trial court. Clark v.Smith (1998), 130 Ohio App.3d 648, 662; Rock v. Cabral (1993),67 Ohio St.3d 108, 112. As a consequence, these determinations are not subject to reversal on appeal absent an abuse of discretion. Clark, 130 Ohio App.3d at 662. An abuse of discretion has been defined as an "unreasonable, arbitrary or unconscionable" decision. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
R.C. 3113.215 governs the calculation of a child support obligation. The applicable version of R.C. 3113.215(A)(1) defines "income" as follows:
 (a) For a parent who is employed to full capacity, the gross income of the parent.
 (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent, and any potential income of the parent.
"Gross income" generally means "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable * * *." R.C.3113.215(A)(2). R.C. 3113.215(A)(5) further defines "potential income" as follows:
 (5) `Potential income' means both of the following for a parent that the court, * * * determines is voluntarily unemployed or voluntarily underemployed:
 (a) Imputed income that the court * * * determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides;
 (b) Imputed income from any nonincome-producing assets of a parent, as determined from the local passbook savings rate or another appropriate rate as determined by the court or agency, not to exceed the rate of interest specified in division (A) of section 1343.03 of the Revised Code, if the income is significant.
Thus, in addition to a parent's gross income, the trial court must also take into account the potential income of a parent that has been found to be voluntarily unemployed or underemployed. Clark, supra, at 663. The law in Ohio is clear, however, that prior to imputing income, the trial court must find that the parent is voluntarily unemployed or underemployed. Id. citing Rock, supra, 67 Ohio St.3d at 111. Without this initial finding, the trial court is prohibited from imputing income to a parent. Parkins v. Parkins (Jan. 24, 1990), Hancock App. No. 5-88-18, unreported.
In this case, the evidence reveals that Kathleen earned $57, 402 in wages from January 1999 to October 1999 as a sales representative for Cincinnati Bell Wireless. Kathleen testified that she left this lucrative position on October 1, 1999, due to "unbearable" working conditions, which included low employee morale, unethical practices, and unwanted sexual advances from a manager. In the late fall and winter of 1999, Kathleen assisted a friend in opening two art museums in the Columbus area. This was a temporary position for which she earned approximately $6,000.
After the art museums opened, Kathleen stated that she decided not to return to a full-time sales position since she would have to work approximately twelve hours per day to earn income comparable to her Cincinnati Bell Wireless salary. Instead, she enrolled herself in school to become a medical massage therapist, for which she attends classes every Tuesday and Thursday from 6:00 p.m. to 10:00 p.m. Kathleen testified that she expects to receive a state certification in approximately thirty-six months. Once she becomes properly certified, Kathleen intends to charge $80 per hour for her services. Kathleen informed the court that in the meantime, she is reluctant to obtain outside employment, especially on a full-time basis, because much of her time is spent either in school, studying, or caring for her children.
Notwithstanding these statements, the judgment entry in this matter clearly indicates that the trial court did not find Kathleen's testimony to be credible, particularly her claims regarding "unbearable" working conditions at Cincinnati Bell Wireless. The court instead found that Kathleen made the decision to become voluntarily unemployed, basically choosing to assume the role of a stay-at-home mother while attending night school on a part-time basis. The court then imputed $78,362.81 to Kathleen, apparently taking into consideration the income that she actually earned in 1999, and the income she would have earned had she remained at Cincinnati Bell Wireless. Given the evidence in the record, we cannot say that the trial court abused its discretion herein.
Accordingly, Kathleen's first assignment of error is overruled.
 Assignment of Error II The trial court erred and committed an abuse of discretion when it imputed wages of $78,362.81 to the Plaintiff-Appellant as it failed to state specific findings of fact to support such imputation pursuant to O.R.C. 3113.215(A)(5).
Again, R.C. 3113.215 governs the calculation of a child support order. Once a trial court determines the amount to be paid under a child support order, as calculated pursuant to the basic support schedule and pursuant to the applicable "worksheet", that amount is rebuttably presumed to be correct. See R.C. 3113.215(B)(1). A trial court is not required to issue specific findings of fact with respect to a child support order unless the court has deviated from the basic support schedule. R.C. 3113.215(B)(2)(c).
This case centers on the trial court's initial determination of gross income, rather than an issue of deviation. The statute does not require findings of fact when a court imputes potential income to a parent who is found to be voluntarily underemployed or unemployed. Furthermore, in Rock v. Cabral (1993), 67 Ohio St.3d 108,113, the Supreme Court of Ohio addressed the subject by stating that " * * * an appellate court must be able to ascertain from the trial court's journal entry the amount of potential income imputed, and the trial court's reasons for imputing income to a child support obligor." The court's entry herein satisfies these requirements.
Thus, in the absence of any directive, statutory or otherwise, the general rule is that a party to an action must specifically request the court to make written findings of fact. Civ.R. 52. If a party fails to make such a request, we must presume that the trial court applied the law correctly, and affirm the judgment if there is some evidence in the record to support the trial court's decision. See, e.g., Shaffer v. Shaffer (1996), 109 Ohio App.3d 205,209.
The record in this case establishes that Kathleen did not file a request for written findings of fact under Civ.R. 52. A careful review of the evidence also reveals that the trial court calculated Kathleen's gross income by considering the actual income earned during 1999, and the income she would have earned had she not decided to terminate her employment with Cincinnati Bell Wireless. As a result, we cannot say that the trial court abused its discretion.
Kathleen's second assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
 __________________________ WALTERS, J.
 SHAW and BRYANT, JJ., concur.