OPINION
Appellant, David Kimmey, appeals from a judgment of the Court of Common Pleas of Allen County, Domestic Relations Division, granting him a divorce from Lynn Kimmey, Appellee, and dividing the parties' marital estate. Lynn has also filed a cross-appeal in this case. Finding one of the arguments advanced on appeal to have merit, we affirm in part and reverse in part the judgment of the trial court.
The Kimmeys were married in March of 1986, with two children being born as issue of the relationship. In April 1997, David filed for divorce, citing incompatibility as grounds. Lynn answered the complaint, simultaneously filing a counterclaim for divorce also citing incompatibility.
During the pendency of the action, the parties entered into agreements as to several of the issues before the court, proceeding to trial on the grounds for divorce and resolution of the remaining issues. The evidence was presented to the trial court during hearings on October 12, 2000, and January 31, 2001.
On February 13, 2001, the trial court issued a Decision in which it accepted the parties' partial agreement, made a limited disposition of marital estate, and requested additional information as to the nature of David's disability retirement benefits. Upon review of the additional information, the trial court issued a Supplemental Decision on March 14, 2001. These decisions were journalized and incorporated by reference into a Judgment Entry Decree of Divorce on March 30, 2001.
This appeal and cross-appeal followed.
On appeal to this Court, David presents the following three assignments of error:
 Assignment of Error Number One. The Trial Court committed error prejudicial to the Plaintiff, David Kimmey, finding that his Disability Retirement Benefits received from and under the Federal Employees' Retirement System are marital property subject to division and not separate property of David Kimmey pursuant to Ohio Revised Code Section 3105.171(A)(6).
In his first assignment of error David contends that the trial court erred when it classified his disability benefits as marital property and divided it as a marital asset.
During the parties' marriage David was employed by the United States Postal Service. As a result of a back injury, David was placed on disability and began to receive what was referred to as "disability retirement" from the Federal Employees' Retirement System ("FERS"). Lynn claimed that these disability payments were an early onset of retirement benefits that were earned during the marriage and, therefore, subject to division as a marital asset.
R.C. 3105.171(B) requires the trial court, upon the application of either party in an action for divorce, to determine what constitutes marital and separate property, to divide the marital property equitably between the parties, and, pursuant to R.C. 3105.171(D), "to disburse a spouse's separate property to that spouse." The trial court's characterization of the parties' property involves a factual inquiry.[1]
As an appellate court, we review property characterization determinations under the standard of manifest weight of the evidence.[2] A judgment of a trial court will not be reversed as being against the manifest weight of the evidence if the court's judgment is supported by some competent, credible evidence.[3]
Pension or retirement benefits earned during the marriage are marital assets and a factor to be considered in an equitable property division.[4] However, social security benefits, disability retirement pay, and railroad benefits are not marital assets.[5] Disability pension benefits are not considered marital property "unless they are accepted in lieu of old-age retirement pay, in which event they are marital property to the extent that such retirement pay value is included in the disability pension benefit."[6] The trial court's classification of a disability benefit will not be disturbed if the record contains some competent credible evidence supporting that determination.[7]
Testimony and evidence of the extent of the impact of David's disability benefits upon his old-age retirement at trial was minimal. In fact, in its February 13, 2001 Decision, the trial court found that additional evidence was necessary to make a proper classification of the benefits and ordered the parties to obtain supplementary information, to collectively review that information, and to advise the court as to the manner in which the court should receive the information. On February 20, 2001, David responded with a motion to supplement the record containing three exhibits. Lynn failed to respond or provide any material until after the trial court had issued its March 14, 2001 Supplemental Decision.
In its Supplemental Decision the trial court found that the FERS benefits were not compensation for David's personal injury and divided the gross amount of FERS benefits to be received by David equally between the parties. The trial court noted that FERS benefits were "referred to as a disability retirement", that the benefit currently received impacts the retirement benefit that would ultimately be received as retirement, and that the benefit was received in lieu of retirement benefits.
The record reveals that under the terms of the FERS disability retirement plan David received 60% of his three highest years' salary less social security benefits for the first year annuity and had been receiving 40% of his three highest years' salary less social security benefits from the second year thereafter. An Office of Personnel Management web page submitted to the trial court provided little guidance, indicating only that disability retirement recipients would lose their "special retirement supplement." There is no indication as to the amount of this loss or the manner, if at all, in which other old-age retirement benefits would be affected.
We note initially that the designation of disability benefits as "disability retirement" does not control this analysis. Our review of the record reveals that other than the loss of the "special retirement supplement", there is no evidence indicating that David's disability retirement was paid in lieu of old-age retirement benefits or that the amount to which the old-age retirement benefits he would otherwise be entitled to receive were diminished by the current receipt of disability benefits. Moreover, even with the loss of the "special retirement supplement", where old-age retirement benefits are impacted by the disbursement of current disability benefits, disability benefits are marital property only to the extent that such retirement pay value is included in the disability pension benefit. The trial court could not divide the entirety of disability benefits without ascertaining the degree to which old-age retirement benefits had been affected. Therefore, we find that the trial court erred when it entered a distributive award of the FERS disability benefits.
Accordingly, David's first assignment of error is sustained.
 Assignment of Error Number Two The Trial Court committed error prejudicial to the Plaintiff, David Kimmey, finding that he has the ability to work and attributing additional income to him over and above his disability income for the purposes of calculating any support amounts.
For his second assignment of error, David contends that the trial court abused its discretion in finding that he was underemployed and by imputing minimum wage income. For the following reasons, we disagree.
"The Supreme Court of Ohio has held that the issue of `whether a parent is voluntarily (i.e. intentionally) unemployed or voluntarily underemployed' and `the amount of "potential income" to be imputed' are determinations within the trial court's discretion that will be upheld absent an abuse of discretion."[8] An abuse of discretion is described as an "unreasonable, arbitrary or unconscionable" attitude.[9]
R.C. 3113.215(A)(1) provides:
`Income' means either of the following:
 (a) For a parent who is employed to full capacity, the gross income of the parent;
 (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent, and any potential income of the parent.
R.C. 3113.215 permits the trial court to impute income to a party under certain circumstances. The statute provides:
 (A)(5) `Potential income' means both of the following for a parent that the court, or a child support enforcement agency * * * determines is voluntarily unemployed or voluntarily underemployed:
 (a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides;
 (b) Imputed income from any nonincome-producing assets of a parent, as determined from the local passbook savings rate or another appropriate rate as determined by the court or agency, not to exceed the rate of interest specified in division (A) of section 1343.03 of the Revised Code, if the income is significant.
"Thus, in calculating and awarding child support, a trial court must consider the `potential income' as well as the gross income of a parent the court determines to be voluntarily unemployed or underemployed."[10]
Before a trial court may impute income to a parent, the trial court must make a finding that the parent is voluntarily unemployed or underemployed.[11] While the use of the language `voluntarily unemployed' or `voluntarily underemployed' is better practice, "[t]he actual terminology is inconsequential[;] [w]hat is significant is that Appellant voluntarily reduced his income when he was not forced to do so by circumstances beyond his control."[12] If the court finds that the party is voluntarily unemployed or underemployed, it imputes income to the party based upon factors enumerated in R.C. 3113.215(5)(a) and the facts and circumstances of the case.
In the instant case, David was classified as "disabled" for purposes of his FERS disability retirement annuity. David relies, in part, upon this classification for his assertion that the trial court erred in finding him underemployed. However, the mere fact that a party satisfies a "disabled" classification for disability payment purposes does not create a mandatory finding that the party is disabled or unemployable for all purposes. Furthermore, several of these programs, including the FERS, allow "disabled" recipients to continue to work without a loss of benefits. While relevant, it is clear that courts are not bound by social security, worker's compensation, or other disability benefit program determinations or classifications in establishing whether a party is voluntarily unemployed or underemployed.
In the instant case, David admitted that he was able to work with limitations as to what he could do. Though David asserted that his attempts to obtain employment were unsuccessful as a result of physician-imposed restrictions, he also stated that he believed he was able to perform the jobs when he applied for them. David admitted that he had been paid to do lawn mowing, he could do handyman or carpentry work if given the opportunity, and that he performed his own lawn care and had done some roofing repair since his injury. Moreover, two witnesses testified that, in addition to installing their bathroom vinyl floor and commode, David had placed a bid to do window replacement work for them and that they had witnessed David planting shrubbery and trees, mowing the lawn, installing a fence, installing roof vents, and shoveling and snowblowing walkways in the winter.
In its March 14, 2001 entry ordering David to pay child support the trial court stated:
 The Court will further find that evidence indicated that Mr. Kimmey does not involve himself with other activities that could result in possible employment which the Court will take into consideration and impute minimum wage income in the amount of $10,712.00.
It is apparent from this entry that the court found David's current state of underemployment to be voluntary and that it had considered the evidence before the court in imputing minimum wage to him. While there was conflicting testimony regarding David's ability to find employment, it is well established that the trial court is in the best position to resolve factual disputes by weighing the credibility of the witnesses.[13] In this instance, the trial court's findings indicate that it did not find David's testimony as to the full extent of his alleged disabilities to be entirely credible.
Our review of the record reveals that the evidence adduced at trial supports the trial court's conclusion that David is voluntarily underemployed and has an annual earning potential of approximately $10,712.00. Although potential earning figure is a conservative estimate, we cannot in good conscience say that the amount is unreasonable in light of the evidence before the trial court. Therefore, given the evidence in the record, we do not find that the trial court abused its discretion in this regard.
Accordingly, David's second assignment of error is overruled.
 Assignment of Error Number Three The Trial Court committed error prejudicial to the Plaintiff, David Kimmey, finding that the Defendant, Lynn Kimmey be entitled to and should be able to claim both of the parties' minor children for income tax dependency purposes where the parties had placed upon the record, a stipulation that each party claim one of the minor children for income tax purposes as their agreement before the Court.
For his third assignment of error, David argues that the trial court abused its discretion by modifying the parties' stipulated allocation of dependency exemptions.
Trial courts are generally not bound by the stipulations allocating dependency exemptions.[14] Moreover, in Singer v. Dickson,[15] the Ohio Supreme Court found that the clear purpose of dependency exemptions is to provide a federal tax allowance for the costs attributable to supporting children. Given the identified purpose of dependency exemptions, the court held that, unlike a property division, it was logical that an order allocating the exemption would be as modifiable as orders providing for the payment of child support.[16] Therefore, each entry allocating the dependency exemption that preceded the final decree of divorce was interlocutory in nature, subject to, and merging with the trial court's final decree of divorce.[17] Finally, in allocating the federal tax dependency exemption a court should review all pertinent factors, including: the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state, and local income tax rates.[18]
Pursuant to the parties' stipulated agreement, Lynn was to claim both exemptions for the year 2000, and, thereafter, the parties would divide the exemptions. In its original Decision, the trial court allocated the dependency exemptions pursuant to the parties' agreement. However, in its Supplemental Decision, the trial court modified its previous allocation, stating:
 The Court would further indicate that with the limited income of David Kimmey it is appropriate that Lynn Kimmey shall be entitled to claim both as and for all tax dependency purposes pending further order of this court.
Until the entry of a final decree of divorce, the previous allocation was interlocutory and freely modifiable by the trial court. Regardless of the initial adoption of the stipulated dependency allocation, the trial court was not bound by the parties' agreement and retained its right to modify previous allocations. The trial court's Supplemental Decision indicates that it had considered the parties' incomes in allocating the exemptions in a manner producing a net tax savings for the parents, thereby furthering the best interest of the children. Therefore, we find no abuse of discretion in the modification or allocation of the dependency exemptions.
Accordingly, David's third assignment of error is overruled.
In her cross-appeal, Lynn asserts two assignments of error for our consideration.
 Assignment of Error Number One The Trial Court erred to the prejudice of the Defendant by failing to determine the fair market value of the parties' marital assets and/or incorrectly computed the distribution of equity and failed to or incorrectly valued the thrift savings plan.
For her first assignment of error, Lynn argues that the trial court erred in several respects in its division and distribution of the marital estate. These arguments will be identified and addressed in turn.
First, Lynn asserts that the trial court erred by failing to account for potential appreciation in a thrift savings plan between the date of testimony and the entry of the final decree of divorce.
"The choice of a valuation date for marital assets rests upon equitable considerations and is generally a matter within the discretion of the domestic relations court."[19] An appellate court reviews the trial court's valuation under the abuse of discretion standard. As stated above, an abuse of discretion is evidenced by an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court.[20]
"In determining whether the trial court abused its discretion, the reviewing court cannot examine the valuation and division of a particular marital asset in isolation; rather, the reviewing court must consider the totality of the circumstances and view the property division in its entirety."[21] "The mere fact that a property division is unequal, does not, standing alone, amount to an abuse of discretion."[22]
Several courts have addressed changes in the value of marital assets occurring before the final judgment is entered. In Berish v. Berish,[23]
the Ohio Supreme Court held that the trial court did not abuse its discretion by valuing a joint savings account balance that was in existence at the time the parties separated but was not in existence when the court entered the divorce decree. In Wolding v. Wolding,[24] we held that a decrease in the value of stock rendering a property division unequal does not amount to an abuse of discretion. "Many assets involved in a typical property division are subject to fluctuating values" and the parties to the action bear the risk of changes in value.[25] The mere fact that the value of property has allegedly fluctuated between the date a magistrate's report was written and the date the divorce decree was journalized, does not render the entire property division inequitable.[26]
In the instant case, the trial court found August of 1999 to be the de facto termination date of the marriage and valued the plan as of its October 31, 1999 $18,249.00 balance. The thrift plan was awarded to David seventeen months later in the trial court's March 14, 2001 Supplemental Decision.
Lynn does not challenge the court's de facto termination date determination or the October 31, 1999 value; instead, Lynn asserts that this distribution is inequitable in that it fails to account for interest or other appreciation over the seventeen month delay and that the trial court should have reevaluated the thrift plan before rendering a final decision. However, this valuation is consistent with the parties' testimony and recognized de facto termination date of the marriage. Moreover, the marital residence was also valued pursuant to the parties' October 12, 2000 testimony as to an undated and unidentified appraisal. Lynn was awarded all equity in the marital residence and received with it any appreciation from the date of the appraisal.
With any asset distributed, the parties bore the burden of proving the asset's value and assumed the risk of loss or gain. Moreover, considering the valuation and distribution of the thrift plan in the context of the totality of the property division, we do not find an abuse of discretion or that the property division was unreasonable, arbitrary, unconscionable or inequitable.
Lynn also assigns error with the lack of valuation of the FERS disability retirement payments, asserting that the failure to value this benefit created an inequitable and unknowing distribution. However, we will not address this portion of Lynn's assignment of error because we find David's first assignment of error to be dispositive of the issue.
Lynn further contends that the trial court erred in failing to consider the tax consequences and costs associated in the distribution of property pursuant to the court's property division.
In making a division of marital property and any distributive award, R.C. 3105.171(F)(6) requires a court to consider the tax consequences of the property division upon the respective awards to be made to each spouse. If the award is such that, in effect, it forces a party to dispose of an asset to meet obligations imposed by the court, the tax consequences and costs of that transaction should be considered in order to insure an equitable distribution of property.[27] However, a court need not consider tax consequences or costs that are speculative.[28]
Moreover, as mentioned previously, we do not examine particular portions of the distribution in isolation; rather, we consider the totality of the circumstances and view the property division in its entirety.[29]
In the present case, the trial court's division reveals an essentially equal, dollar-for-dollar, distribution of the marital assets and liabilities. Personal property and household goods were divided pursuant to the parties' stipulations. Marital assets and liabilities were then distributed between the parties. To equalize the distribution of marital equity, the trial court ordered that David transfer $1,048.00 from a thrift savings plan to Lynn, pursuant to a Qualified Domestic Relations Order ("QDRO"), and that Lynn be responsible for all tax consequences associated with the aforementioned withdrawal.
We note initially that the costs of the transfer and taxes associated therewith are a speculative and isolated portion of the division. Furthermore, the amounts at issue are minimal in comparison to the overall distribution. Considering the totality of the circumstances and viewing the division in its entirety, we do not find an abuse of discretion or that the property division was unreasonable, arbitrary, unconscionable or inequitable.
Accordingly, Lynn's first assignment of error is overruled.
 Assignment of Error Number Two The Trial Court abused its discretion in failing to make an award of spousal support, failure to award back child support, and failure to consider the Defendant's unilateral support of the children and the unilateral payment of household expenses from the date of the filing of the divorce in May 2000 until November, 2000.
In her second assignment of error, Lynn asserts that the trial court abused its discretion in failing to award spousal support, including back support. Lynn specifically contends that the trial court failed to consider her unilateral support of the parties' children and payment of household expenses.
Trial courts are statutorily mandated, pursuant to R.C. 3105.18(C)(1), to consider several factors in determining the appropriateness of a spousal support award. An award of spousal support will not be reversed absent an abuse of discretion.[30]
The trial court's Supplemental Decision demonstrates that it went to significant lengths in considering the factors enumerated in R.C.3105.18(C)(1) in light of all evidence presented at trial. Having reviewed those factors, the trial court found that it would be neither reasonable nor appropriate to award spousal support. We cannot say that this determination was so unsupported by the evidence in the record to constitute an abuse of discretion or that resulting award was not "fair, equitable and in accordance with the law."[31]
Accordingly, Lynn's second assignment of error is overruled.
Having found error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby reversed only insofar as it relates to the characterization and division of the Federal Employees Retirement System disability retirement annuity as a marital asset.
Judgment affirmed in part, reversed in part, and cause remanded.
BRYANT and HADLEY, J.J., concur.
[1] Barkley v. Barkley (1997), 119 Ohio App.3d 155, 160.
[2] Id.
[3] Id., citing Sec. Pacific Natl. Bank v. Roulette (1986),24 Ohio St.3d 17, 20; C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus.
[4] Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 178.
[5] R.C. 3105.171(A)(6)(a)(vi); Hoyt, 53 Ohio St.3d at 178, fn. 3;Bauser v. Bauser (1997), 118 Ohio App.3d 831.
[6] Bauser, 118 Ohio App.3d at 835; Okos v. Okos (2000),137 Ohio App.3d 563, 568; Motter v. Motter (July 27, 2000), Wyandot App. No. 16-99-14, unreported.
[7] Motter v. Motter (July 27, 2000), Wyandot App. No. 16-99-14, unreported; see, also Hoyt, 53 Ohio St.3d 177 at paragraph one of the syllabus.
[8] Shank v. Shank (1997), 122 Ohio App.3d 189, 192, citing Rock v.Cabral (1993), 67 Ohio St.3d 108, 112.
[9] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[10] Rock, 67 Ohio St.3d at 111.
[11] Clark v. Smith (1998), 130 Ohio App.3d 648, 663.
[12] Justinger v. Schlegel (July 15, 1997), Paulding App. No. 11-97-3, unreported; See, also Clark, 130 Ohio App.3d at 663.
[13] Pasqualone v. Pasqualone (1980), 63 Ohio St.2d 96, 105-106.
[14] Barker v. Barker (Sept. 22, 2000), Union App. No. 14-2000-17, unreported.
[15] Singer v. Dickinson (1992), 63 Ohio St.3d 408, 414 and syllabus.
[16] Id., at 413-414 (citations omitted); See, also Cook v. Cook
(Sept. 23, 1996), Stark App. No. 96-CA-0081, unreported.
[17] Fisher v. Fisher (June 18, 1999), Mercer App. No. 10-99-02, unreported; Colom v. Colom (1979), 58 Ohio St.2d 245.
[18] Id., at syllabus.
[19] Spychalski v. Spychalski (1992), 80 Ohio App.3d 10, 15, citingBerish v. Berish (1982), 69 Ohio St.2d 318, 319.
[20] Blakemore, 5 Ohio St.3d at 219.
[21] Rehfeldt v. Rehfeldt (Feb. 12, 1986), Hamilton App. No. C-850056, unreported, citing Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222. See, also, Holcomb v. Holcomb, 44 Ohio St.3d at 132.
[22] Cherry v. Cherry, 66 Ohio St.2d at paragraph two of the syllabus.
[23] Berish v. Berish, 69 Ohio St.2d at 318
[24] Wolding v. Wolding (1992), 82 Ohio App.3d 235, 238
[25] Rehfeldt v. Rehfeldt (Feb. 12, 1986), Hamilton App. No. C-850056, unreported; See, also Risner v. Risner (Dec. 28, 1995), Jackson App. No. 94CA757, unreported.
[26] Id.
[27] Day v. Day (1988), 40 Ohio App.3d 155, 159; Terry v. Terry
(1994), 99 Ohio App.3d 228, 233.
[28] Day, 40 Ohio App.3d at 159; Frost v. Frost (1992),84 Ohio App.3d 699.
[29] Rehfeldt v. Rehfeldt (Feb. 12, 1986), Hamilton App. No. C-850056, unreported, citing Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222. See, also, Holcomb, 44 Ohio St.3d at 132.
[30] Bolinger v. Bolinger (1996), 49 Ohio St.3d 120, 122.
[31] See, e.g., Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, paragraph two of the syllabus.