[Cite as *In re E.Z.H.*, 2013-Ohio-3494.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT


IN THE MATTER OF:  :    JUDGES:
E.Z.H. AND B.E.H.  :
                        :    Hon. W. Scott Gwin, P.J.
                        :    Hon. William B. Hoffman, J.
                        :    Hon. Patricia A. Delaney, J.
                        :
                        :    Case No. 12CA015
                        :
                        :
                        :
                        :
                        :    O P I N I O N


CHARACTER OF PROCEEDING:      Appeal from the Holmes County Court
of Common Pleas, Probate and Juvenile
Division, Case No. 12C088/12C089


JUDGMENT:                      AFFIRMED


DATE OF JUDGMENT ENTRY:       August 5, 2013


APPEARANCES:

For Plaintiffs-Appellants:            For Defendant-Appellee:
Mary Logan and James Logan      Mindy Haven

DAN GUINN                      MINDY HAVEN, pro se
Guinn Law Firm LLC           5352 Coal Bank Road
118 West High Ave.            Orrville, OH 44667
New Philadelphia, OH 44663

*Delaney, J.*

{¶1}   Appellants James and Sherry Logan appeal from the September 18, 2012 decision of the Holmes County Court of Common Pleas, Probate and Juvenile Division, granting legal custody of E.Z.H. and B.E.H. to appellee Mindy Haven.  Appellee did not file a brief in this appeal.

## FACTS AND PROCEDURAL HISTORY

{¶2}   Appellee Mindy Haven ("Mother") is the mother of E.Z.H. and B.E.H ("minor children").  She is currently married to Bruce Haven ("Father"), although the parties live separate and apart and intend to divorce.  In 2006, however, Mother and Father were still together, and Children's Services initiated an investigation of the family due to issues of drug abuse and cleanliness of the home.  At that time, Mother and Father agreed to give custody of the minor children to Mother's sister, Tabitha Cutright ("Aunt").  Mother testified she was given the option of voluntarily giving up custody to Aunt or taking a drug test; she agreed to relinquish custody because she could not have passed a drug test.  In 2008, Mother, Father, and Aunt agreed to give custody of the minor children to appellees Sherry Logan ("Grandmother") and James Logan ("Step-Grandfather").  The minor children have remained in the grandparents' custody since 2008.

*Mother Seeks Restoration of Custody*

{¶3}   On April 5, 2012, Mother filed a "Complaint for Custody" of each minor child, asserting that she had changed, and was ready to be a mother to her children, and able to provide them with a stable environment.  A trial was held; evidence at the trial consisted entirely of testimonial evidence from various family members including

Grandmother, Mother, Father, Aunt, Mother's paramour Michael Brillhart, Brillhart's daughter, and maternal Grandfather. With the exception of Grandmother, all of these witnesses support Mother's bid for custody of the minor children.[1]

*Grandmother and Step-Grandfather Provided a Home Since 2008*

{¶4}   Grandmother has had custody of the minor children since 2008 and while she understood it was a temporary arrangement and either parent could eventually seek to regain custody, she now opposes Mother's Complaint for custody. Her opposition is two-fold: Mother is not able to provide the minor children with a stable environment because she is dependent upon Brillhart to have a place to live, and if Mother gets custody, the minor children will have to change schools.

{¶5}   Currently, Grandmother permits Mother visitation every other weekend. Technically Father gets alternate weekends, although he has only exercised visitation twice. Grandmother expressed that she is afraid of losing the minor children and has told them this. She testified she has restricted Mother (and Father's) overnight visitation with the minor children occasionally because she didn't know who the children would be staying with. She doesn't know Brillhart's 22-year-old son who lives in the home Brillhart shares with Mother, or Father's fiancé. Grandmother stated she tries to "keep track" of what's happening on the visitations by questioning the children about what they did while they were away.

{¶6}   Grandmother acknowledged Mother is a good mother who interacts appropriately with the minor children. Mother tries to contact the minor children more

---

[1] Father's role in this litigation seems to be as a bystander; the record is silent as to his position on custody of the minor children but he is not seeking custody himself. He has exercised visitation with the minor children twice since 2008, although he testified he has called them.

often than every other weekend, but Grandmother continues to keep every other weekend available for Father, although Father has admittedly only seen the minor children twice since Grandmother obtained custody. Grandmother is concerned that Mother will not come to her for help if she needs it, but agreed Mother has other sources of family support.

*Mother's Efforts to Improve Environment*

{¶7} Mother testified she originally agreed to give her sister, Aunt, custody of the minor children in 2006 because she knew she could not pass a drug test at that time; in 2008, she still did not have a stable home, so she then agreed that Grandmother should have custody. A child support order went into effect around that time and Mother has been compliant with the exception of one contempt finding. Mother stated she has been "clean" and not using drugs for three years. She has obtained her G.E.D. and is a certified home health aide; she works at Personal Touch in Wooster, a home health care agency. She works part-time and her hours are somewhat flexible. She has support available so that someone is home when the children get home from school. She completed a parenting class in 2011 because it was part of her case plan and her goal has always been to get her children back. She did not have a driver's license when Children's Services originally became involved with the family, but has now obtained one.

{¶8} Mother has been in a relationship with Michael Brillhart for over three years and lives with him in the home he owns in Orrville, Ohio. It is a 3-bedroom home and the minor children each have their own room when they visit. If Mother gains custody, the minor children will attend Smithville Schools. Mother testified that she has

already contacted the school system about requirements for registering the children there, has obtained school supply lists, and has spoken to the football coach about her elder son.

*Family Support for Mother*

{¶9}   The remaining witnesses support Mother's Complaint for custody.  Father has only seen the minor children twice since 2008 and pays support for a total of five biological children from his part-time salary of $8.75/hour.  Aunt testified she has no concerns with Mother's parenting abilities, Mother keeps a clean home and Aunt would help her in the event Mother needs extra support.  Aunt does not have concerns presently with Grandmother's home, but feels the minor children are given limited social interaction there.  Brillhart's adult daughter testified she has observed her father's positive relationship with the minor children and she is available to babysit the minor children when necessary.  Maternal Grandfather testified that he and Grandmother do not communicate and have a poor relationship; he supports Mother's Complaint because she has matured since 2006 and has become a responsible adult.

*Brillhart's Support of Mother*

{¶10} Michael Brillhart testified that he is the father of two adult children, one of whom lives in his home, along with Brillhart and Mother.  He owns his home and has been employed at his workplace for 31 years.  Brillhart has a good relationship with the minor children and testified that he loves them very much; he welcomes them into his home.  Brillhart is aware of the reasons why Mother originally gave up custody, including her previous drug use.  He testified drug use is unacceptable in his relationship with her and she has not used in over three years.  He has seen a "drastic"

change in Mother in that time: she has become more reliable, goes to work every day, and creates a stable environment around herself by cooking, cleaning, and making a home. Brillhart also testified that if Mother gets custody, she will not alienate Grandmother or keep Grandmother from contact with the minor children. Brillhart emphasized the importance of family relationships and stated the minor children will not be kept from their grandparents if Mother is given custody.

{¶11} The trial court took the matter under advisement, interviewed the minor children, and issued an order on September 18, 2012, finding that it is in the best interest of the minor children to change legal custody to Mother effective October 1, 2012. Grandmother and Step-Grandfather are granted visitation pursuant to the trial court's order.

{¶12} Grandmother and Step-Grandfather, appellants herein, appeal from the trial court's order granting custody to Mother.

{¶13} Appellants raise two assignments of error:

## ASSIGNMENTS OF ERROR

{¶14} "I. THE TRIAL COURT ERRED IN NOT FINDING A CHANGE OF CIRCUMSTANCES PRIOR TO FINDING THAT IT WAS IN THE BEST INTEREST OF THE MINOR CHILDREN FOR THE APPELLEE-MOTHER TO HAVE CUSTODY."

{¶15} "II. THE COURT ABUSED ITS DISCRETION IN DETERMINING THAT IT WAS IN THE BEST INTERESTS OF THE MINOR CHILDREN FOR THE APPELLEE-MOTHER TO HAVE CUSTODY."

**ANALYSIS**

I, II.

{¶16} Appellants' assignments of error are related and will be considered together. Appellants argue the trial court erred in failing to make a determination of change of circumstances before awarding custody to Mother. They further argue the trial court's conclusion that modification of custody is in the best interests of the minor children constitutes an abuse of discretion. We disagree.

{¶17} In the case of *In the Matter of McLaughlin Children,* 5th Dist. Stark No. 2002–CA–00316, 2003–Ohio–761, this Court held a trial court has broad discretion in matters concerning the allocation of parental rights and responsibilities and we will not disturb its decision on appeal absent an abuse of discretion. *Masters v. Masters*, 69 Ohio St.3d 83, 85, 630 N.E.2d 655 (1994). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). The trial court is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Therefore, deferential review in a child custody determination is especially crucial "where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 1997–Ohio–260, 674 N.E.2d 1159.

{¶18} The juvenile court has exclusive original jurisdiction to determine the custody of any child not a ward of another court of this state. R.C. 2151.23(A)(2). The

trial court did not cite a statute in its decision awarding legal custody to Mother, but made reference to the best interests of the minor children. The trial court did not find a change of circumstances pursuant to R.C. 3109.04(E)(1)(a) and appellants argue this omission was in error; we disagree. In *Culp v. Burkhart*, we reiterated our position in *In re Christian Hollowell*, 5th Dist. Stark No. 2002CA00127, 2002-Ohio-6405, that R.C. 3109.04(E) is not applicable to motions by a natural parent to regain custody:

> R.C. 2151.23(A)(2) clearly grants specific statutory authority to the juvenile court to determine custody issues of parent vis-à-vis a non-parent. Once the juvenile court has exercised jurisdiction over a child, the court has continuing jurisdiction to determine what is in the best interests of the child. As a result, a change of circumstances is not a prerequisite to the resumption of the juvenile court's jurisdiction. Furthermore, the philosophy of requiring a change of circumstances in divorce custody issues is based upon the presumption that parents are equals and must be treated as such. In a juvenile proceeding where the parties are not on equal footing, the change of circumstances standard is not applicable. *Culp v. Burkhart*, 5th Dist. Tuscarawas No. 04AP010006, 2004-Ohio-4425, ¶ 9.

{¶19} The instant case involves a custodial modification requested by a natural parent, not an initial determination of legal custody. Mother and Father voluntarily relinquished legal custody. The trial court was not required, therefore, to find a change of circumstances as a prerequisite to allow Mother to regain legal custody. See, *Culp v.*

*Burkhart*, supra;   *In re D.B.E.*, 5th Dist. Holmes No. 10 CA 12, 2011-Ohio-44; *In re Hollowell*, 5th Dist. Stark No. 2002CA00127, 2002-Ohio-6405.

{¶20} Appellant further argues, however, that the trial court abused its discretion in determining the change of custody is in the best interest of the minor children.  We disagree.

{¶21} A motion to regain legal custody causes a trial court to make a determination on the child's best interests and a decision will not be reversed absent an abuse of discretion. *Culp v. Burkhart*, 5th Dist. Tuscarawas No. 04AP010006, 2004-Ohio-4425, ¶ 15, supra, citing *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶22} We find no abuse of discretion by the trial court.  The trial court disagreed with the premise of Grandmother's objection to Mother regaining custody, to wit, that Mother's environment remains unstable.  Instead, the trial court noted it was impressed with the significant gains Mother has made in completing her G.E.D., becoming certified as a home health aide, obtaining a driver's license, and completing a parenting class. Mother has overcome substance abuse issues for the last three years and is in a steady relationship with someone "who evidences a lot of stability in his own life." Grandmother herself acknowledged Mother is a good mom and she has no concerns about care of the minor children when they are with their mother.  In short, "[t]he [trial] court is not sure what more [Mother] can do to show that she is now in a stable situation and able to safely raise her boys."

{¶23} The trial court found the best interest of the minor children warrants that custody should be returned to Mother, and based upon our review of the record, we find the trial court did not abuse its discretion in making this determination.

## CONCLUSION

{¶24} Appellants' two assignments of error are therefore overruled and the judgment of the Holmes County Court of Common Pleas, Probate and Juvenile Division, is hereby affirmed.

By:  Delaney, J. and

Gwin, P.J.

Hoffman, J., concur.

_____

HON. PATRICIA A. DELANEY

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN