[Cite as *In re P.A.R.*, 2014-Ohio-802.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| P.A.R., | : | Case NO. 13CA3550 |
| | : | |
| | : | |
| Minor Child - Custody | : | DECISION AND JUDGMENT ENTRY |
| | : | |

---

APPEARANCES:

COUNSEL FOR APPELLANT:    Jay S. Willis, 612 6ᵗʰ Street, Suite C, P.O. Box 316, Portsmouth, Ohio 45662

COUNSEL FOR APPELLEE:    Brigham Anderson, Anderson & Anderson, 408 Park Avenue, Ironton, Ohio 45638

---

CIVIL APPEAL FROM COMMON PLEAS COURT, JUVENILE DIVISION
DATE JOURNALIZED: 2-24-14
ABELE, P.J.

{¶ 1} This is an appeal from a Scioto County Common Pleas Court, Juvenile Division, judgment that denied a motion to modify custody of P.R., filed by T.S., the child's biological mother and appellant herein. Appellant raises the following assignments of error for review:

FIRST ASSIGNMENT OF ERROR:

"THE DECISION OF THE TRIAL COURT TO GRANT THE MOTION TO DISMISS THE MOTION FOR MODIFICATION OF CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS
    DISCRETION AND ERRED AS A
    MATTER OF LAW WHEN IT
    DENIED APPELLANT'S MOTION
    FOR MODIFICATION OF
    CUSTODY."

THIRD ASSIGNMENT OF ERROR:

"THE DECISION OF THE TRIAL COURT TO GRANT THE
MOTION TO DISMISS THE MOTIONS FOR CONTEMPT
REGARDING PARENTING TIME WAS AGAINST THE
MANIFEST WEIGHT OF THE EVIDENCE."

FOURTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION AND
ERRED AS A MATTER OF LAW WHEN IT DENIED
APPELLANT'S MOTIONS FOR CONTEMPT REGARDING
PARENTING TIME."

{¶ 2}   Shortly after P.R.'s birth, appellees, P.R.'s paternal grandparents, filed a custody petition.   When P.R. was born, appellant and P.R.'s father had abused drugs for several years and continued to do so for several years after the birth.

{¶ 3}   On August 30, 2006, the trial court entered an agreed entry that awarded custody of the child to the appellees and gave appellant and P.R.'s father "reasonable visitation * * * pursuant to the standard orders of visitation of this Court."   Approximately one year later, appellant and P.R.'s father had another child.   Appellant has had custody of the second child since his birth.

{¶ 4}   On November 7, 2011, appellant filed (1) a motion to modify the 2006 custody order; and (2) a motion to find appellees in contempt.   Appellant alleged that the appellees failed to allow her to visit the child and that this failure constituted a change in circumstances. Appellant also requested the court to find appellees in contempt for failing to comply with the 2006 visitation order.

{¶ 5}   On October 25, 2012, the court held a hearing to consider appellant's motions. Appellant testified that she believed that when she agreed to give the appellees custody in 2006

"that nothing would have changed" regarding her right to see the child.   Appellant did not think that she would receive "standard orders of visitation of the Scioto County Juvenile Court," but that she would receive the visitation "under an agreement between her and [appellees] that * * * wasn't filed."   Appellant stated that through February 2012, she did not receive standard visitation.   Appellant testified that in February 2012, she and the appellees agreed that appellant would have standard visitation and that since that time, she generally has been able to visit the child.

{¶ 6}   Appellant further testified that since she began regular visits with the child, they have developed "a good relationship" and the child calls her "mom."   She testified that she feels a "void" without the child and that P.R. and P.R.'s younger sibling should be together to eliminate "confusion."   Also, P.R.'s younger sibling has "been really emotional" when P.R. leaves the visitations.

{¶ 7}   Appellant testified that she believes that circumstances have changed because (1) appellant no longer uses drugs, (2) Mr. Phillips has a new job, and (3) appellees have medical issues.   She also stated that the relationship she and P.R.'s younger sibling have developed with P.R. constitutes a change in circumstances.

{¶ 8}   After appellant presented her evidence, appellees requested the court to dismiss appellant's motion to modify custody.   In particular, the appellees asserted that appellant failed to demonstrate that any change in circumstances had occurred so as to warrant a custody modification.   The trial court stated that it would take the matter under advisement.

{¶ 9}   On March 29, 2013, the trial court denied appellant's motion.   The court determined that the evidence did not show "that the child's or the custodian's circumstances have changed in any significant way since the child's parents agreed to relinquish custody."   The

court explained:

> "Clearly, [appellant]'s circumstances were changed by becoming drug-free, becoming employed, getting divorced and regaining her driver's license. The only changes in the circumstances of the custodians * * * are that they do not take drugs and that Mr. Phillips has another job. No testimony was presented showing that the child's circumstances have changed."

The court found that the change in appellant's circumstances was "not relevant to the R.C. 3109.04(E)(1)(a) inquiry" and denied appellant's motion to modify custody.

{¶ 10} The trial court also denied appellant's contempt motion as it found the evidence "far more conflicting and confusing than clear and convincing." The court explained: "[F]or the last eight months [appellant] has been getting the standard visitation and before that she did not know what her visitation was and she did not know that she was getting the standard order." The court further found that appellant did not know whether appellees actually knew the visitation schedule. Consequently, the court denied appellant's motion to find appellees in contempt. This appeal followed.

I

{¶ 11} In her first and second assignments of error, appellant challenges the trial court's finding that a change in circumstances had not occurred. However, the two assignments of error involve different procedural issues. Nevertheless, because they involve the same substantive issue, we address them together.

{¶ 12} In her first assignment of error, appellant asserts that the trial court erred by granting appellees' motion to dismiss because the facts show that a change in circumstance had, in fact, occurred. In her second assignment of error, appellant argues that she established that a

change in circumstance had, in fact, occurred, and that the court's denial of her motion to modify custody constitutes an abuse of discretion.

{¶ 13} Appellant argues that the following facts constitute a change in circumstances: (1) appellant has been drug-free for over two years, she maintains full-time employment, and she has a stable home; (2) appellees have "serious health issues;" (3) Mr. Phillips was convicted of theft in 2007; and (4) the child has developed "a strong relationship with both her mother and her brother."   Appellant also claims that the appellees consistently denied her visitation with the child and that this denial constitutes a change in circumstances.

A

MOTION TO DISMISS

{¶ 14} A challenge to a decision to deny a Civ.R. 41(B)(2)[1] motion is, in essence, a challenge to the weight of the evidence.   Civ.R. 41(B)(2) provides:

> After the plaintiff, in an action tried by the court without a jury, has
>
> completed the presentation of the plaintiff's evidence, the defendant, * * *, may
>
> move for a dismissal on the ground that upon the facts and the law the plaintiff
>
> has shown no right to relief.   The court as trier of the facts may then determine
>
> them and render judgment against the plaintiff or may decline to render any
>
> judgment until the close of all the evidence.

When a trial court rules on a Civ.R. 41(B)(2) motion, the court must weigh the evidence, resolve any conflicts, and render judgment in the defendant's favor if the plaintiff has shown no right to

---

[1]   Civ.R. 41(B)(2) applies when a party moves to dismiss a motion to modify a prior custody order.   Stevenson v. Kotnik, 11th Dist. Lake No. 2010-L-063, 2011-Ohio-2585, ¶58; Jones v. Jones, 4th Dist. Highland No. 06CA25, 2007-Ohio-4255, ¶54.

relief.   Ramco Specialties, Inc. v. Pansegrau, 134 Ohio App.3d 513, 520, 731 N.E.2d 714

(1998).   "Where plaintiff's evidence is insufficient to sustain plaintiff's burden in the matter, the

trial court may dismiss the case."   In re Estate of Fugate, 86 Ohio App.3d 293, 297, 620 N.E.2d

966 (4th Dist. 1993).   A reviewing court will not reverse a dismissal pursuant to Civ.R. 41(B)(2)

unless the trial court's decision is incorrect as a matter of law or is against the manifest weight of

the evidence.   Johnson v. Tansky Sawmill Toyota, 95 Ohio App.3d 164, 167, 642 N.E.2d 9

(1994).

{¶ 15} When an appellate court reviews a trial court's custody decision under the

manifest weight of the evidence standard of review, the court """"weighs the evidence and all

reasonable inferences, considers the credibility of witnesses and determines whether in resolving

conflicts in the evidence, the [fact-finder] clearly lost its way and created such a manifest

miscarriage of justice that the [judgment] must be reversed * * *."""   Eastley v. Volkman, 132

Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶20, quoting Tewarson v. Simon, 141 Ohio

App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001); State v. Thompkins, 78 Ohio St.3d 380, 387,

678 N.E.2d 541 (1997).

{¶ 16} Furthermore, when reviewing evidence under the manifest weight of the evidence

standard, an appellate court generally must defer to the fact-finder's credibility determinations.

Eastley at ¶21.   As the Eastley court explained:

> "'[I]n determining whether the judgment below is manifestly against the
> weight of the evidence, every reasonable intendment must be made in favor of the
> judgment and the finding of facts. * * *
>    If the evidence is susceptible of more than one construction, the reviewing
> court is bound to give it that interpretation which is consistent with the verdict and
> judgment, most favorable to sustaining the verdict and judgment.'"

Id., quoting Seasons Coal Co., Inc. v. Cleveland, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984),

fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶ 17} Additionally, deferring to the trial court on matters of credibility is "crucial in a

child custody case, where there may be much evident in the parties' demeanor and attitude that

does not translate to the record well."  Davis v. Flickinger, 77 Ohio St.3d 415, 419, 674 N.E.2d

1159 (1997).  As the Ohio Supreme Court long-ago explained:

> "In proceedings involving the custody and welfare of children the power of the
> trial court to exercise discretion is peculiarly important.   The knowledge obtained
> through contact with and observation of the parties and through independent
> investigation can not be conveyed to a reviewing court by printed record."

Trickey v. Trickey, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952).

B

STANDARD OF REVIEW GOVERNING CHILD CUSTODY DECISIONS

{¶ 18} Generally, appellate courts review trial court custody modification decisions with

the utmost deference.   Davis, 77 Ohio St.3d at 418; Miller v. Miller, 37 Ohio St.3d 71, 74, 523

N.E.2d 846 (1988).   Thus, a reviewing court will not reverse a trial court's child custody

decision absent an abuse of discretion.   In re West, Washington App. No. 01CA8 (Dec. 24,

2001), citing Davis v. Flickinger, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, 1162 (1997), and In

re Shepard, Scioto App. No. 98CA2586 (March 19, 1999).   Generally, an abuse of discretion

constitutes more than an error of law or judgment; rather, it implies the court's attitude was

unreasonable, arbitrary or unconscionable.   E.g., Landis v. Grange Mut. Ins. Co., 82 Ohio St.3d

339, 342, 695 N.E.2d 1140 (1998); Malone v. Courtyard by Marriott L.P., 74 Ohio St.3d 440,

448, 659 N.E.2d 1242 (1996).   An appellate court may not find an abuse of discretion simply by

substituting its judgment for that of the trial court.   State ex rel. Duncan v. Chippewa Twp.

Trustees, 73 Ohio St.3d 728, 732, 654 N.E.2d 1254 (1995); In re Jane Doe 1, 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181 (1991).   Furthermore, "[c]ustody determinations are some of the most difficult and agonizing decisions a trial judge must make, and, therefore, appellate courts must grant wide latitude to a trial court's consideration of the evidence."   Id., citing Davis v. Flickinger, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

C

LEGAL STANDARD GOVERNING CUSTODY MODIFICATION

{¶ 19} R.C. 3109.04(E)(1)(a)[2] governs the modification of a prior custody decree and states:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child.   * * * *

---

[2]  We observe that neither party disputes that R.C. 3109.04(E)(1)(a) applies in this case, a case that involves a custody dispute between a parent and a nonparent.   In re Brayden James, 113 Ohio St.3d 420, 2007−Ohio−2335, 866 N.E.2d 467; Purvis v. Hazelbaker, 181 Ohio App.3d 167, 2009-Ohio-765, 908 N.E.2d 489 (4th Dist.), ¶10; Bragg v. Hatfield, 152 Ohio App.3d 174, 2003-Ohio-1441, 787 N.E.2d 44 (4th Dist.), ¶21.   But, see, In re E.Z.H., 5th Dist. Holmes No. 12CA015, 2013-Ohio-3494, ¶19.

{¶ 20} Thus, the statute precludes a trial court from modifying a prior custody decree unless it finds that a change has occurred in the circumstances of the child, the child's residential parent,[3] or a parent subject to a shared-parenting decree and that the child's best interest necessitates modifying the prior custody decree. In re Brayden James, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶14. Thus, whether a change in circumstances occurred is a threshold question in a custody modification case.

D

CHANGE IN CIRCUMSTANCES

{¶ 21} The change in circumstances requirement promotes stability in a child's life. Id. at ¶15. As the court explained in Davis, 77 Ohio St.3d at 418:

> "'The clear intent of [R.C. 3109.04(E)(1)(a)] is to spare children from a constant tug of war * * *. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.'"

Quoting Wyss v. Wyss, 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (1982). Appellate courts must not, however, "make the threshold for change so high as to prevent a trial judge from modifying custody if the court finds it necessary for the best interest of the child." Davis, 77 Ohio St.3d at 420-421. Thus, although the change "need not be 'substantial,'" it must be more than slight or inconsequential. Id. at 417-418; Bragg at ¶23 (4th Dist.) ("The change must be significant—something more than a slight or inconsequential change."). A change in circumstances must be one of consequence–one that is substantive and significant–and it must relate to the child's welfare. Davis, 77 Ohio St.3d at 418; In re D.M., 8th Dist. Cuyahoga No. 87723, 2006–Ohio–6191, ¶35, quoting Rohrbaugh v. Rohrbaugh, 136 Ohio App.3d 599, 604–05,

---

[3] Even though appellees are not the child's "residential parent," the Ohio Supreme Court nevertheless applies this statute to residential nonparents. In re Brayden James, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467.

737 N.E.2d 551 (7ᵗʰ Dist., 2000) (explaining that the phrase change of circumstances means "'an event, occurrence, or situation which has a material * * * effect upon a child'"); Beaver v. Beaver, 143 Ohio App.3d 1, 10, 757 N.E.2d 41 (4ᵗʰ Dist., 2001), quoting Holtzclaw v. Holtzclaw, Clermont App. No. CA92-04-036 (Dec. 14, 1992) ("'Implicit in the definition of changed circumstances is that the change must relate to the welfare of the child.'").

{¶ 22} A change in circumstances may be of consequence, for example, when (1) a residential parent's new marriage creates hostility among the parties and frustrates visitation; (2) a child advances from infancy to adolescence; (3) a residential parent's unruly behavior necessitates police involvement; and (4) "fights between the residential parent and a new spouse * * * require[] police intervention, along with the fact that the residential parent had moved six times in two years." James at ¶18 (citations omitted). Furthermore, "[i]t is a well-settled rule in Ohio that a custodial parent's interference with visitation by a noncustodial parent may be considered as part of a 'change in circumstances' which would allow for modification of custody." Holm v. Smilowitz, 83 Ohio App.3d 757, 773, 615 N.E.2d 1047 (4ᵗʰ Dist., 1992). For interference with visitation to constitute a change in circumstances, however, the interference must be "systematic" or "continuous and willful." Hinton v. Hinton, 4ᵗʰ Dist. Washington No. 02CA54, 2003-Ohio-2785, ¶29. Thus, "frequent conflicts, misunderstandings, defects and defaults in literal visitation compliance is [not] sufficient prima facie grounds to demonstrate a sufficient change of circumstances as to allow modification." Venuto v. Pochiro, 7ᵗʰ Dist. Mahoning No. 02CA225, 2004-Ohio-2631, ¶49. When a parent repeatedly denies the other telephonic communication and requires the nonresidential parent to seek court intervention on multiple occasions to obtain visitation, then this interference may constitute a change in

circumstances.   Clark v. Smith, 130 Ohio App.3d 648, 654, 720 N.E.2d 973 (3rd Dist. 1998) (upholding trial court's finding that the mother's interference with visitation constituted a change in circumstances when mother repeatedly denied the father telephonic communication and when on at least three occasions, father had to seek court intervention in order to obtain visitation).

{¶ 23}  In James, supra, the Ohio Supreme Court determined, as a matter of law, that the record failed to demonstrate a change in circumstances sufficient to warrant a change in custody. Id. at ¶18.   Although the Ohio Supreme Court did not set forth the facts that supported its determination that a change in circumstances had not occurred, the appellate decisions reveal the underlying facts.   In the appeal after remand, the court determined that based upon the Ohio Supreme Court's reversal, the nonresidential parents' "commendable progress" in attending counseling sessions and completing various parenting programs, "was not pertinent to a 'change in circumstances' determination."   In re B.J., 1st Dist. Hamilton No. C-081261, 2009-Ohio-6485, ¶19; In re James, 163 Ohio App.3d 442, 2005-Ohio-4847, 839 N.E.2d 39 (1st Dist.,2005), ¶3. Neither is the birth of a new sibling to a nonresidential parent, nor the nonresidential parent's purchase of a home and demonstration of stability.   James, 163 Ohio App.3d at ¶66.

{¶ 24}  In the case at bar, we believe that the evidence that appellant presented is similar to the evidence that the parents presented in James and that the Ohio Supreme Court determined is insufficient to constitute a change in circumstances.   Just as the parents in James, appellant made commendable progress since she admirably relinquished custody to the paternal grandparents.   Appellant has also become drug-free, obtained employment, and has a stable home.   Moreover, just like the parents in James, appellant added a sibling to the family.   The James court, however, did not believe that these changes in the nonresidential parent's life constituted the necessary change in circumstances in the child's life, or in the child's custodian's

life.   Thus, we conclude that the very positive and encouraging changes appellant has made in her life, while commendable, are insufficient to meet the R.C. 3109.04(E)(1)(a) change in circumstances requirement.   None of these changes are changes in the child's or the child's custodian's circumstances.

{¶ 25}  Appellant nevertheless asserts that she and P.R.'s younger sibling have developed a strong relationship with P.R. and that this development also constitutes a change in P.R.'s circumstances.   However, our review of the record reveals no evidence that the development of this relationship has affected P.R. in a material way and has changed P.R.'s circumstances. Consequently, one may only speculate that the development of the relationship has affected P.R.

{¶ 26}  Although appellant testified that before she began to regularly visit P.R. the child "looked at [her] as if [she] was an aunt or * * * an acquaintance maybe," the evidence also fails to show that this change has affected the child's circumstances in a consequential manner. Appellant states that the child has always called her "mom" and continues to do so.   Appellant, however, offered no testimony that P.R.'s increased visitation has changed the child's circumstances in some way other than simply seeing appellant more often and developing a stronger relationship.   While the increased visitation certainly may affect appellant and the younger sibling and create a "void" for them, we found no evidence in the record to show that a "void" has been created in P.R.'s life and that this "void" affects P.R. in a consequential manner.

{¶ 27}  We additionally observe that appellant visited P.R. since her 2006 birth, although with varying degrees of regularity.   The present change in visitation with P.R. is a slight change–it is what P.R. has always known, but now occurs on a more consistent basis.   However, we again note that nothing in the record shows that increased visits have affected P.R. in any

material way.   Therefore, we do not believe that under the facts in the case sub judice, the

increased visitation is a change of substance in the child's circumstances.   This is not to state

that a nonresidential parent's increased visitation with a child who is in a nonparent's custody

could never constitute a change in circumstances.   Rather, our holding is based upon the

particular facts in the case at bar.


{¶ 28} Moreover, assuming, arguendo, that appellees denied appellant visitation at

various points between 2006 and 2012, nothing in the record shows that it was so systematic,

willful or continuous as to constitute an interference with appellant's visitation and, thus,

constitute a change in circumstances.   During that time, apparently neither appellant nor

appellees knew exactly what visitation rights or schedule appellant actually had.   Appellant

explained that even though the 2006 order granted her standard visitation, she did not know what

that meant and she did not know whether appellees knew.   She stated that none of the parties

employed counsel in 2006 and she believed that she and the appellees followed an off-the-record

visitation agreement.   Appellant also testified that when she went to appellees' house to visit

with P.R., appellees rarely denied her the chance to do so.   Appellant further admitted that for at

least the first two and one-half years of P.R.'s life, she continued to abuse drugs and that she

entered drug rehabilitation on three different occasions.   In light of these circumstances, any

failure of the appellees to allow appellant to have regular visitation is not an interference with

appellant's visitation schedule–no one knew exactly what schedule they should follow, appellant

continued for a time to abuse drugs, and appellant entered drug rehabilitation.   Appellant also

candidly admits that once the court clarified the visitation orders in 2012, she was able to visit

with the child.   After our review of the case sub judice we agree with the trial court's conclusion

that the minor problems that appellant claims to have encountered when she exercised visitation after 2012 do not rise to the level of a systematic, willful or continuous denial of visitation so as to constitute an interference with visitation and a change in circumstances.

{¶ 29} Additionally, even if the appellees have developed health problems, the evidence does not establish that these are changes of consequence. Nothing in the record demonstrates that the health conditions have affected the child or the appellees in any significant manner. Likewise, nothing in the record demonstrates that any of the other alleged changed circumstances have had a substantive impact on the child or appellees. At most, the changes are slight or inconsequential.

{¶ 30} Thus, we conclude that the trial court did not abuse its discretion by determining that appellant failed to establish that a change in the child's or appellees' circumstances had occurred. Consequently, the court did not abuse its discretion by denying appellant's motion to modify custody. Moreover, to the extent that the trial court granted appellees' motion to dismiss, the trial court did not err as a matter of law by determining that the evidence failed to show a change in circumstances and its finding is not against the manifest weight of the evidence.

{¶ 31} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first and second assignments of error.

II

{¶ 32} In her third and fourth assignments of error, appellant asserts that the trial court erred by failing to find appellees in contempt for failing to comply with the 2006 standard visitation order.

A

STANDARD OF REVIEW

{¶ 33}  Generally, a trial court possesses broad discretion when considering a contempt

motion.  State ex rel. Celebrezze v. Gibbs, 60 Ohio St.3d 69, 75, 573 N.E.2d 62 (1991); State ex

rel. Ventrone v. Birkel, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981).  Thus, absent an abuse of

discretion, an appellate court will uphold a trial court's contempt decision. E.g., Welch v. Muir,

4th Dist. No. 08CA32, 2009–Ohio–3575, ¶10.  We previously set forth the meaning of "abuse of

discretion" and thus do not repeat it here.

B

CONTEMPT

{¶ 34}  "Contempt of court" is the disobedience or disregard of a court order or a

command of judicial authority.  E.g., Daniels v. Adkins, 4th Dist. Ross No. 93CA1988 (June 3,

1994); Johnson v. Morris, 4th Dist. Ross No. 93CA1969 (Dec. 13, 1993).  It involves conduct

that engenders disrespect for the administration of justice or "which tends to embarrass, impede

or obstruct a court in the performance of its functions."  Denovchek v. Trumbull Cty. Bd. of

Commrs., 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988), quoting Windham Bank v.

Tomaszczyk, 27 Ohio St.2d 55, 271 N.E.2d 815, paragraph one of the syllabus (1971).  "The

law of contempt is intended to uphold and ensure the effective administration of justice," "to

secure the dignity of the court and to affirm the supremacy of law."  Cramer v. Petrie, 70 Ohio

St.3d 131, 133, 637 N.E.2d 882 (1994). A court "possesses both inherent and statutory authority

to compel compliance with its lawfully issued orders."  State ex rel. Bitter v. Missig, 72 Ohio

St.3d 249, 252, 648 N.E.2d 1355 (1995), citing Cramer, 70 Ohio St.3d at 133–134, and R.C.

2705.02(A).

**{¶ 35}** A distinction exists between criminal and civil contempt. Criminal contempt

proceedings vindicate the authority of the legal system and punish the party who offends the

court.   Scherer v. Scherer, 72 Ohio App.3d 211, 214, 594 N.E.2d 150 (3rd Dist., 1991); In re

Skinner, 4th Dist. No. 93CA547 (Mar. 23, 1994).   The sanction imposed for criminal contempt

operates as a punishment for the completed act of disobedience.   E.g., Brown v. Executive 200,

Inc., 64 Ohio St.2d 250, 254, 416 N.E.2d 610 (1980).

**{¶ 36}** Civil contempt exists when a party fails to do something ordered by a court for the

benefit of an opposing party.   Pedone v. Pedone, 11 Ohio App.3d 164, 165, 463 N.E.2d 656 (8th

Dist., 1983); Beach v. Beach, 99 Ohio App. 428, 431, 134 N.E.2d 162 (2nd Dist., 1955).   The

punishment is remedial, or coercive, in civil contempt.   State ex rel. Henneke v. Davis, 66 Ohio

St.3d 119, 120, 609 N.E.2d 544 (1993).   In other words, civil contempt is intended to enforce

compliance with a court's orders.

**{¶ 37}** The party seeking to enforce a court order must establish, by clear and convincing

evidence, the existence of a court order and the nonmoving party's noncompliance with the terms

of that order.   Wolf v. Wolf, 1st Dist. Hamilton No. C–090587, 2010–Ohio–2762, ¶4; Morford v.

Morford, 85 Ohio App.3d 50, 55, 619 N.E.2d 71 (4th Dist., 1993).   The burden then shifts to the

defendant to establish any defense.   Morford.

> "Clear and convincing evidence is that measure or degree of proof which is more
> than a 'preponderance of the evidence,' but not to the extent of such certainty as is
> required 'beyond a reasonable doubt' in criminal cases, and which will produce in
> the mind of the trier of fact a firm belief or conviction as to the facts sought to be
> established."

Cross v. Ledford, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

Thus, even when the plaintiff bears the burden of proof by "clear and convincing" evidence, our

standard of review is deferential and the presence of "some competent, credible evidence" requires us to affirm the trial court's judgment.   State v. Miller, 4th Dist. No. 11CA3217, 2012–Ohio–1901, ¶24, citing State v. Schiebel, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).

{¶ 38}  In the case at bar, we cannot state that the trial court's refusal to hold appellees in contempt for violating the 2006 custody order constitutes an abuse of discretion.   Clearly, a court order gave appellant standard visitation, but the appellees did not give appellant that standard visitation.   Appellant, however, entered a drug rehabilitation program and used drugs during the first two and one-half years of the child's life.   Thus, it would have been impractical for appellant to exercise "standard visitation" during the time she abused drugs and attended drug rehabilitation.   Furthermore, appellant stated that she did not know what exactly "standard visitation" meant and that she did not know whether appellees knew what it meant.   She also explained that she believed that she and appellees had reached some other agreement regarding visitation that is not documented in the record.   In view of these circumstances, we cannot conclude that the trial court abused its discretion by refusing to find appellees in contempt of the 2006 order.

{¶ 39}  Accordingly, based upon the foregoing reasons, we hereby overrule appellant's third and fourth assignments of error and affirm the trial court's judgment.   We also hasten to add that we recognize the positive strides that appellant has made and that we encourage her to continue her progress for both her benefit and the benefit of her family.

JUDGMENT AFFIRMED.

[Cite as *In re P.A.R.*, 2014-Ohio-802.]

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellees shall recover of appellants the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & *Powell, J.: Concur in Judgment & Opinion
                              For the Court

BY:_____
Peter B. Abele
Presiding Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.

*Judge Michael Powell, Twelfth District Court of Appeals, sitting by assignment of the Ohio Supreme Court in the Fourth Appellate District.